**FEDERAL DEPOSIT INSURANCE CORP. as Receiver for Guaranty Bank, Petitioner,**

v.

**Christa C. LENK, Administrator of the Estate of John Albert Thompson, Respondent.**

No. 08–0908.

Supreme Court of Texas.

March 9, 2012.

See also, 323 S.W.3d 199.

Michael L. Dinnin, Tricia Robinson De-Leon, Bracewell & Giuliani LLP, Dallas, TX, J. Brett Busby, Bracewell & Giuliani, LLP, Houston, TX, for Federal Deposit Insurance Corporation.

Don Krause, Bayne Snell & Krause, S. Mark Murray, S. Mark Murray, Inc., San Antonio, TX, for Christa C. Lenk.

Karen Sue Neeley, Cox Smith Matthews Incorporated, Austin, TX, for Amicus Curiae Independent Bankers Association of Texas.

B. Scott Daugherty, Texas Bankers Association, Austin, TX, for Amicus Curiae The Texas Bankers Association.

Ellen B. Mitchell, Cox Smith Matthews Inc., San Antonio, TX, for Amicus Curiae Jefferson State Bank.

Justice GUZMAN delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice WAINWRIGHT, Justice MEDINA, Justice JOHNSON, Justice WILLETT, and Justice LEHRMANN joined.

When a party fails to preserve error in the trial court or waives an argument on appeal, an appellate court may not consider the unpreserved or waived issue. In this suit for an alleged breach of a deposit agreement, we review a court of appeals judgment in favor of an estate administrator, as well as the estate administrator's cross-petition concerning attorney's fees. Because many of the arguments raised by the parties invoke issues of error preservation or waiver, we decline to grant either party the relief it seeks.

Petitioner Guaranty Bank[1] asks us to review the court of appeals' judgment in favor of respondent Christa Lenk, and, in a cross-petition, Lenk seeks a remand to the trial court for a determination of attorney's fees. The facts of this case closely mirror those of *Jefferson State Bank v. Lenk*, 323 S.W.3d 146 (Tex.2010). In both cases, bank customers died intestate. Shortly thereafter, Melvyn Spillman, a former Bexar County probate clerk and former employee of the county medical examiner, presented false letters of administration to both banks and gained access to both deceased customers' accounts. Spillman subsequently used both accounts to make several transactions, ultimately withdrawing most of the accounts' funds.[2] Unlike Jefferson State Bank, Guaranty Bank closed the decedent's account in 2001 when the balance was depleted due to Spillman's withdrawals and bank service charges. Spillman was eventually arrested for perpetuating these frauds.

In September 2003, the probate court appointed Lenk administrator of both decedents' estates. Though aware of Spillman's fraudulent activities when she was appointed, Lenk made no attempt to recover funds from either bank until June 2005, when she demanded that each bank return the full amounts withdrawn · by Spillman. Both banks refused to comply,

and, on June 27, 2005, Lenk filed identical causes of action against the banks. In each pleading, she claimed the bank breached the deposit agreement by refusing her payment demand. Lenk also argued that she was entitled to all sums in each account since the time of the decedent's death.[3]

In each suit, the bank and Lenk moved for summary judgment, and the trial court granted each bank's motion and denied Lenk's. The court of appeals reversed in favor of Lenk in both matters. *See Lenk v. Jefferson State Bank*, 323 S.W.3d 199, 203 (Tex.App.-San Antonio 2009), *rev'd*, 323 S.W.3d 146 (Tex.2010); 360 S.W.3d 511, 514 (Tex.App.–San Antonio 2008). This Court granted review of Jefferson State Bank's petition and reversed the court of appeals' judgment, holding that the statute of repose set forth in Texas Business and Commerce Code section 4.406 barred Lenk's claims because she failed to notify Jefferson State Bank of the unauthorized transactions within sixty days of her appointment as estate administrator.[4] *Jefferson State Bank*, 323 S.W.3d at 149–50.

Because Lenk filed the exact same cause of action against both banks, the only material distinction between this case and *Jefferson State Bank* is the theories and

---

1. The Federal Deposit Insurance Corporation (FDIC) was substituted as a party for Guaranty Bank on October 2, 2009. For ease of reference, we refer to the FDIC as Guaranty Bank throughout this opinion.

2. In this case, Spillman gained access to an account belonging to John Albert Thompson, who died on January 30, 2000. After Spillman deposited and withdrew various amounts from the account, Lenk alleged that he stole $148,430.28 from Thompson's estate.

3. Lenk specifically asserted in each petition: Under the terms of the depositor's agreement with Decedent and applicable law,

Defendant was required to pay sums on deposit to Plaintiff on demand or to her order to such persons as she may direct. Defendant failed and refused to pay to Plaintiff the sums deposited upon her demand. Accordingly, Plaintiff is entitled to judgment in the amount of all sums which were deposited in the name of Decedent or his representative since the date of his death.

4. The statute sets a one-year period of repose, which was contractually shortened to sixty days in that case.

defenses asserted by the banks. The resolution of both appeals, however, turns on this distinction. Jefferson State Bank raised numerous defenses in the trial court, including the statute of repose under section 4.406, a theory on which it prevailed in this Court. *See id.* Conversely, Guaranty Bank chose not to raise a statute of repose defense in the trial court. Instead, Guaranty Bank decided to argue that (1) it did not breach the deposit agreement because Thompson's account was closed when Lenk filed her suit, and (2) it did not substantially cause Lenk's injuries.

In this Court, Guaranty Bank's arguments relate solely to its central contention that it did not breach the account agreement. Specifically, Guaranty Bank claims that it did not breach the agreement because (1) the account was closed prior to Lenk's payment demand, (2) Lenk acquiesced in Spillman's unauthorized withdrawals by waiting almost two years after her appointment to dispute them, and (3) the bank was entitled to rely on Spillman's forged letters of administration. Guaranty Bank also argues that the court of appeals improperly reviewed the denial of Lenk's motion for partial summary judgment. In a cross-petition, Lenk contends we should remand the case to the trial court for a determination of attorney's fees. Because we conclude Guaranty Bank breached the deposit agreement, but failed to raise any affirmative defenses compelling a judgment in its favor, we affirm the court of appeals' judgment. We additionally deny Lenk's cross-petition because Lenk failed to properly raise the issue of attorney's fees in the court of appeals.

## I. Accrual of Breach Action

█ Guaranty Bank argues it did not breach the deposit agreement when Lenk demanded payment in 2005 because the agreement terminated when the account was closed in 2001. Guaranty Bank further asserts that any cause of action for a breach of the deposit agreement would have accrued in 2000 and early 2001 when the bank denied liability by providing statements to Spillman. Guaranty Bank maintains that Lenk filed a demand-based claim simply as a way to evade the applicable statutes of limitations or repose, which would have barred alternative claims, such as a wrongful payment claim, Lenk chose not to pursue. We disagree.

█ It is well-settled that a general deposit, such as that at issue here, creates a debtor-creditor relationship between a bank and its customer. *Sears v. Cont'l Bank & Trust Co.*, 562 S.W.2d 843, 844 (Tex.1977); *Upper Valley Aviation, Inc. v. Mercantile Nat'l Bank*, 656 S.W.2d 952, 955 (Tex.App.-Dallas 1983, writ ref'd n.r.e.); *Meador v. Rudolph*, 218 S.W. 520, 526 (Tex.Civ.App.-Amarillo 1919, writ dism'd w.o.j.) (describing the "well-recognized principle of law that the deposit is a debt owing by the bank to the party in whose name the deposit is made"). Given this relationship, a bank may only pay out money in accordance with a customer's order, and also bears the burden of demonstrating proper payment. *Sears*, 562 S.W.2d at 844 ("The bank must justify its withdrawal from the depositor's account when the depositor proves the balance in his account and sues the bank for that amount."); *Mesquite State Bank v. Prof'l Inv. Corp.*, 488 S.W.2d 73, 75 (Tex.1972) (observing that "the burden of proving payment under authority from the depositor is on the bank" (citing *L.G. Balfour Co. v. State Trust & Sav. Bank of Dallas*, 120 S.W.2d 477, 479 (Tex.Civ.App.-Waco 1938, no writ))); *Peavy–Moore Lumber Co. v. First Nat'l Bank of Beaumont*, 133 Tex. 467, 128 S.W.2d 1158, 1162 (Tex.Comm'n

App.1939) (noting that when a person makes a deposit in the name of another, "the bank becomes the debtor of the person for whom and in whose name the deposit is made, and the money cannot be withdrawn by him who made the deposit unless it is proven that he, rather than the person in whose name the deposit was made, is the true owner"). While a bank's wrongful payment of a general deposit does not breach the deposit agreement, a bank's refusal to pay such funds to the rightful account holder will. *Hodge v. N. Trust Bank of Tex., N.A.*, 54 S.W.3d 518, 525–26 (Tex.App.-Eastland 2001, pet. denied).

■ Here, the bank refused to pay general deposit funds to the rightful account holder (Lenk), and so the bank breached the deposit agreement. Even if Lenk could have sued separately for wrongful payment, she was also entitled to sue for breach when the bank refused her demand for payment. *See id.; see also Upper Valley Aviation*, 656 S.W.2d at 955 (observing that a bank deposit creates a debtor/creditor relationship, and thus a person must sue for breach of the depository contract to recover the deposit); *Canyon Lake Bank v. New Braunfels Utils.*, 638 S.W.2d 944, 949 (Tex.App.-Austin 1982, no writ) (discussing demand-based claim); *Hinds v. Sw. Sav. Ass'n of Houston*, 562 S.W.2d 4, 4–5 (Tex.Civ.App.-Beaumont 1977, writ ref'd n.r.e.) (same); *First State Bank of Seminole v. Shannon*, 159 S.W. 398, 401 (Tex.Civ.App.-Amarillo 1913, writ ref'd) (same). Given the debtor-creditor relationship between a bank and a customer and the corresponding requirement that the bank must repay *any* deposits to the customer, *see Sears*, 562 S.W.2d at 844, a breach action for such a refusal includes funds that were wrongfully paid out by a bank. A customer, after all, will always seek the funds that *should* be on deposit in an account. *See Mesquite State Bank*, 488 S.W.2d at 75 ("In suits against a bank to recover deposits, the burden of proving payment under authority from the depositor is on the bank."). Indeed, Lenk sued for all funds on deposit since Thompson's death (*i.e.*, those funds wrongfully paid out by the bank), not merely for those nonexistent funds in the closed account at the time she made her demand. Thus, Lenk's claim for breach of the deposit agreement fairly encompasses any wrongful payment claim she may have had. *See id.*

■ Because there was a breach, we must next determine when the breach accrued. "A cause of action for denial of deposit liability on a deposit contract . . . does not accrue until the bank has denied liability and given notice of the denial [by providing an account statement] to the account holder." TEX. FIN.CODE § 34.301(b). Thus, as a general matter, a bank's refusal to pay funds on a customer's demand commences the accrual of a demand-based cause of action. *See Hodge*, 54 S.W.3d at 525–26. But, importantly, section 34.301(b) goes on to state: "A bank that provides an account statement . . . to the account holder is considered to have denied liability and given the notice as to any amount not shown on the statement. . . ." TEX. FIN.CODE § 34.301(b). Guaranty Bank urges us to hold that any cause of action for breach of the deposit agreement thus accrued when it denied liability by sending account statements to Spillman in 2000.

*Jefferson State Bank* precludes this holding. In that case, we unconditionally rejected Jefferson State Bank's contention that it satisfied its burden of sending or making available statements when it sent them to the imposter Spillman. *Jefferson State Bank*, 323 S.W.3d at 149 (concluding that "sending Spillman the statements could not fulfill the Bank's obligation to

provide account statements 'to a customer'" (citing TEX. BUS. & COM.CODE § 4.406(a))). While *Jefferson State Bank* concerned the statute of repose under section 4.406 of the Business and Commerce Code, the rationale and logic of that opinion apply equally here. As we observed in Jefferson State Bank, any reliance Jefferson State Bank may have had on Spillman's fraudulent letters of administration would not have altered the fact that Spillman was not the bank's customer. *See id.; see also* TEX. BUS. & COM.CODE § 4.406(a), (f) (precluding a bank customer "from asserting against the bank [an] unauthorized signature" if the customer does not timely "discover and report the customer's unauthorized signature" after the bank "sends or makes available to a customer a statement of account").

Similarly, a bank may not deny liability by providing account statements to an imposter estate administrator when section 34.301(b) of the Finance Code specifically provides that a bank must provide account statements "*to the account holder.*" TEX. FIN.CODE § 34.301(b). Spillman, an imposter administrator, was not the account holder. Under Guaranty Bank's reasoning, Lenk's demand-based cause of action would have accrued when Guaranty Bank began sending statements to Spillman in 2000, three years before Lenk—the legitimate estate administrator—was even appointed. In *Jefferson State Bank*, we held that in the event of a customer's death, a

bank satisfies its section 4.406 burden of making an account statement available by retaining statements at a bank, but that the customer's burden to report unauthorized signatures does not arise until an estate representative is appointed. *Jefferson State Bank*, 323 S.W.3d at 149–50. The same logic should apply when determining when a bank denies liability in the face of a demand-based claim. We thus conclude that Guaranty Bank denied liability once Lenk was appointed administrator in 2003. *See id.*[5] At that point, Lenk would have had the opportunity to review any statements for the account prior to its closing and bring a timely demand-based claim.

■ Guaranty Bank's speculative argument that Lenk sued for breach of the deposit agreement in order to circumvent the applicable statute of repose under section 4.406 is also devoid of any merit. As mentioned previously, Lenk filed the exact same cause of action—on the same day—in this case as she did in *Jefferson State Bank*. In *Jefferson State Bank*, we held that the statute of repose barred Lenk's claim. *Jefferson State Bank*, 323 S.W.3d at 150.

■ The statute of repose requires a person to report unauthorized transactions to a bank within one year of account statements being made available. *See* TEX. BUS. & COM.CODE § 4.406(f). If a person fails to report the unauthorized transaction, the

---

5. The fact that the account was closed when Lenk demanded payment does not change our analysis. Under the bank's rationale, a bank could wrongfully pay out an account's entire balance to an imposter, as happened here, then unilaterally close the account to avoid liability to the account holder or proper estate administrator. Further, as discussed above, in a situation such as this where the bank has paid out sums to an imposter, a plaintiff in Lenk's position will naturally seek to withdraw the amount of funds that *should* be on

deposit, not the actual account balance after the wrongful withdrawals. Given the debtor-creditor relationship between a bank and its customer and the requirement that a bank must repay any deposits to a customer on her order, it follows that a person is entitled to demand payment for amounts that should be on deposit, not the amount actually in the account after wrongful withdrawals, even if the bank has unilaterally closed the account. *See Mesquite State Bank*, 488 S.W.2d at 75.

person is barred from bringing a claim for payment. *See id.* The statute of repose demands that a person report unauthorized transactions as a condition precedent to bringing suit. *See, e.g., Am. Airlines Emps. Fed. Credit Union v. Martin,* 29 S.W.3d 86, 95 (Tex.2000) (observing that section 4.406 places a duty on bank customers to discover and report account irregularities and is similar to a condition precedent); *Nat'l Title Ins. Corp. Agency v. First Union Nat'l Bank,* 263 Va. 355, 559 S.E.2d 668, 671 (2002) (observing that the statute of repose constitutes a condition precedent to a customer's right to file claims against a bank). Unlike a statute of limitations, the statute of repose is an absolute bar to suit and "runs from a specific date *without regard to the accrual of a cause of action.*" *Jefferson State Bank,* 323 S.W.3d at 147 n. 2 (emphasis added) (citing *Holubec v. Brandenberger,* 111 S.W.3d 32, 37 (Tex.2003) and *Trinity River Auth. v. URS Consultants, Inc.-Tex.,* 889 S.W.2d 259, 261 (Tex.1994)); *see Sandoe v. Lefta Assocs.,* 559 A.2d 732, 736 n. 5 (D.C.1989) (stating that "[a] statute of repose ... establishes an absolute time period within which legal proceedings must be initiated, *regardless of when a cause of action accrues*" (emphasis added)). "A statute of repose is therefore a substantive definition of rights, rather than a procedural limitation." *Jefferson State Bank,* 323 S.W.3d at 147 n. 2 (quoting *Trinity River Auth.,* 889 S.W.2d at 261). As in *Jefferson State Bank,* the

repose time period began to run when Lenk was appointed in 2003, regardless of the accrual date of her cause of action.[6] Lenk had one year from the date of her appointment to report the unauthorized transactions to the bank, and she failed to do so. *See id.* at 147.

■■■■ But Guaranty Bank failed to raise the statute of repose as an affirmative defense in the trial court, and, in this Court, the bank expressly disclaims reliance on the statutes of repose and limitations as independent grounds for summary judgment. It is settled that "[a] court cannot grant summary judgment on grounds that were not presented." *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 204 (Tex.2002) (citing *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 912 (Tex.1997)).[7] Moreover, as an affirmative defense, the statute of repose is only available to parties that properly raise it in the trial court. *See* Tex.R. Civ. P. 94. "When a defendant moves for summary judgment based on an affirmative defense, such as the statute of repose, the defendant, as movant, bears the burden of proving each essential element of that defense." *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996) (per curiam); *see also Jefferson State Bank,* 323 S.W.3d at 148–50 (explaining that, *when raised as a defense,* the statute of repose begins to run when an administrator is appointed). Thus, we will not analyze Guaranty Bank's petition in light of any such defenses. *See*

---

**6.** As explained *supra,* section 34.301(b) of the Finance Code indicates that Lenk's cause of action began to accrue in 2003 when Lenk was appointed administrator.

**7.** *See also* Tex.R. Civ. P. 166a(c) (instructing that a "motion for summary judgment shall state the specific grounds therefor"); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993) ("[A] motion for summary judgment must itself expressly present the grounds upon which it is made. A motion

must stand or fall on the grounds expressly presented in the motion."); *Westchester Fire Ins. Co. v. Alvarez,* 576 S.W.2d 771, 772–73 (Tex.1978), *overruled on other grounds by City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979)) ("The purpose of [Rule 166a(c)] is to provide the opposing party with adequate information for opposing the motion, and to define the issues for the purpose of summary judgment.").

TEX.R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

The dissent agrees that under section 34.301(b) of the Finance Code, Lenk's cause of action began to accrue in 2003. *See* 361 S.W.3d at 613 (Hecht, J., dissenting) ("Lenk was appointed the representative of Thompson's estate in September 2003. Under Section 34.301(b), her action against the bank accrued then, not in June 2005."). The dissent parts company by believing that demand-based claims do not exist. *Id.* at 614 ("The problem with the claim Lenk asserts is not that it is time-barred; the problem is that under Section 34.301(b), the claim does not exist, and for good reason."). This statement either ignores the fact that we have consistently recognized demand-based claims since 1913, *see Shannon*, 159 S.W. at 401, or that section 34.301(b) changed only when those demand-based claims begin to accrue for limitations purposes. Section 34.301(b) limits when demand-based claims may be brought but it does not eliminate them. Unlike limitations, repose does not depend on when a cause begins to accrue. *Jefferson State Bank*, 323 S.W.3d at 147 n. 2. Repose here required Lenk to sue within one year of being appointed administrator in 2003, TEX. BUS. & COM.CODE § 4.406(f); *Jefferson State Bank*, 323 S.W.3d at 147, rather than the limitations requirement of suing within four years of being appointed administrator in 2003, TEX. FIN.CODE § 34.301(b) (defining accrual as when bank denies liability by making account statements available); TEX. CIV. PRAC. & REM. CODE § 16.051 (establishing residual four-year limitations period). Because Lenk sued two years after being appointed administrator, limitations would not bar her claim and is not at issue in this case. TEX. FIN.CODE § 34.301(b); TEX. CIV. PRAC. &

REM.CODE § 16.051. The dissent relies on a statute that is not relevant to Lenk's claim to attempt to explain that the claim never existed in the first place.

The dissent also believes that our decision "will be significant to the entire financial industry in Texas" and will result in a windfall to the estate here. 361 S.W.3d at 614 (Hecht, J., dissenting). Banks have been on notice since at least 1913 that demand-based claims exist. *Shannon*, 159 S.W. at 401. And they also have the protection of various defenses. Our decision today gives full effect to these claims and defenses. Further, there is no evidence in the record identifying the source of the additional funds and there is certainly no evidence to suggest they came from somewhere other than the estate.

Lenk's cause of action for breach of the deposit agreement began to accrue when she was appointed in 2003, and thus was able to access the estate's account statements for the first time. However, Guaranty Bank did not raise a viable defense that compels judgment in its favor. Accordingly, we hold that Guaranty Bank breached the deposit agreement and that it raised no defense that negates its liability.

## II. Estoppel by Acquiescence

■ Guaranty Bank argues that Lenk acquiesced to any unauthorized withdrawals by failing to dispute them for nearly two years after her appointment. In doing so, Guaranty Bank relies on *L.G. Balfour Co.*, a 1938 court of appeals decision. We reject this argument. *L.G. Balfour* merely states the statute of repose rule later codified in section 4.406 of the Business and Commerce Code. Thus, the theory of estoppel by acquiescence is not distinct from the affirmative defense of section 4.406 which, as previously mentioned, Guaranty

Bank did not rely on in the trial court or at this Court. *Compare, e.g., Oak Cliff Bank & Trust Co. v. Aetna Cas. & Sur. Co.,* 436 S.W.2d 165, 169 (Tex.Civ.App.-Dallas 1969, no writ) (explaining that a bank customer has a duty to examine bank statements and notify a bank of forged signatures within a reasonable time, or else the customer "may be said to have acquiesced in the correctness of the statement[s]"), *with* TEX. BUS. & COM. CODE § 4.406(c)–(d) (stating that a customer may be precluded from asserting a claim for unauthorized signature or alteration if a bank proves the customer failed to reasonably examine a statement and alert the bank of any irregularities).

Even assuming estoppel by acquiescence is a distinct theory, Guaranty Bank did not preserve that argument in the trial court because it did not raise it as an affirmative defense.[8] *See* TEX.R. CIV. P. 94 (requiring parties to plead estoppel, statute of frauds, statute of limitations, waiver, "and any other matter constituting an avoidance or affirmative defense").[9] Accordingly, Guaranty Bank failed to preserve error on its acquiescence argument. *See* TEX.R. CIV. P. 166a(c).

### III. Reliance on Forged Letters of Administration

■■■ Guaranty Bank next claims that, under Texas Probate Code section 186, it was entitled to rely on Spillman's apparently valid letters of administration when it allowed Spillman to access Thompson's account. In *Jefferson State Bank,* we did

not reach this issue because Lenk's claim was barred by the statute of repose. 323 S.W.3d at 147 n. 3. We decline to consider the section 186 argument here because Guaranty bank did not raise this issue at the trial court, and therefore failed to preserve error. *See* TEX.R. CIV. P. 166a(c).

### IV. Review of Motion for Partial Summary Judgment

■■■ Guaranty Bank argues the court of appeals erred in reviewing the trial court's denial of Lenk's motion for partial summary judgment. It contends that, because Lenk failed to move for summary judgment on her request for attorney's fees, the trial court's order denying her motion is not a final order subject to appellate court review. But, Lenk correctly responds that:

> When both parties move for partial summary judgment on the same issues and the trial court grants one motion and denies the other, as here, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered.

*Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005) (citing *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000)). Here, the parties moved for summary judgment on the same issues, and the trial court granted Guaranty Bank's motion, denied Lenk's,

---

8. Guaranty Bank devoted two sentences concerning acquiescence in its final post-hearing filing in the trial court. However, in those sentences, Guaranty Bank did not assert it as a defense. Instead, the bank argued Spillman was the cause of Lenk's damages.

9. *See also Curtis & Windham Architects, Inc. v. Williams,* 315 S.W.3d 102, 104 (Tex.App.-Houston [1st Dist.] 2010, no pet.) (stating that

acquiescence is an affirmative defense); *Calkins v. Goette,* No. 05–03–01022–CV, 2004 WL 1950366, at *1 (Tex.App.-Dallas Sept. 23, 2004, no pet.) (same); *Chase v. Watling,* No. 05–99–00265–CV, 2000 WL 10301, at *4 (Tex. App.-Dallas Jan. 7, 2000, pet. denied) (same); *Green v. Parrack,* 974 S.W.2d 200, 202–03 (Tex.App.-San Antonio 1998, no pet.) (same).

and stated that all relief not granted was denied. As Guaranty Bank correctly points out, the only other pending issue not raised in the motions was Lenk's claim for attorney's fees, and, as we discuss below, Lenk waived this issue on appeal. Moreover, the trial court's order disposed of all issues in the case not only by virtue of the language of the order, but also because Lenk's attorney's fees claim was necessarily disposed of when the trial court ruled in Guaranty Bank's favor. Accordingly, the court of appeals' review of the summary judgment motions was proper.

## V. Cross–Petition for Attorney's Fees

██ Lenk filed a cross-petition seeking a remand to the trial court to determine an award of attorney's fees. Lenk claims that, because this issue was not addressed in her motion for partial summary judgment, it should now be reviewed by the trial court. Guaranty Bank responds that Lenk waived this argument by not briefing it at the court of appeals. The bank argues that both parties chose to narrow their appellate arguments, and should be limited to the issues briefed and the relief requested below. We agree with Guaranty Bank.

In her motion for partial summary judgment, Lenk sought damages for Guaranty Bank's breach and asked that the sole remaining issue for determination in the case be her request for attorney's fees. The trial court issued a final judgment denying Lenk's motion. On appeal, Lenk focused on her breach claim, and asked the court of appeals to reverse and render in her favor, which the court did. Later, Lenk raised the issue of attorney's fees in a motion for rehearing, which the court of appeals denied. We decline to address Lenk's claim for attorney's fees because she did not properly raise the issue at the court of appeals. *See, e.g.*, TEX.R.APP. P.

53.2(f) (explaining that, when a party files a petition for review in the Supreme Court, "[i]f the matter complained of originated in the trial court, it should have been . . . assigned as error in the court of appeals"). Thus, we deny Lenk's cross-petition.

## VI. Conclusion

Lenk's claim for breach of the deposit agreement began to accrue in 2003, when Lenk was appointed as estate administrator. Because the bank breached the deposit agreement, yet failed to raise viable affirmative defenses against Lenk's breach claim, we will not render judgment in its favor. Lenk's cross-petition for attorney's fees was not properly raised in the court of appeals, and thus we reject this claim as well. Accordingly, we grant Guaranty Bank's petition for review and, without hearing oral argument, TEX.R.APP. P. 59.1, affirm the court of appeals' judgment.

Justice HECHT filed a dissenting opinion, in which Justice GREEN joined.

Justice HECHT, joined by Justice GREEN, dissenting.

John Albert Thompson died in January 2000 with about $3,000 on deposit in a Guaranty Bank checking account. A few weeks later, Mel Spillman falsely represented to the Bank that he was Thompson's nephew and estate administrator, and directed that he be named on Thompson's account. The Bank complied. Spillman then deposited around $167,000 to the account, and over the next several months proceeded to withdraw all but a small amount that was eaten up in service charges. The Bank closed the account on September 13, 2001.

Spillman was a fraud. He forged letters of administration in dozens of estates like

Thompson's. In June 2002, he was sentenced to ten years in prison.

In September 2003, Christa Lenk was appointed administrator of Thompson's estate and several others Spillman had defrauded. In June 2005, Lenk demanded that the Bank repay the funds Spillman had withdrawn from Thompson's account years earlier. The Bank refused, and Lenk sued. The trial court granted summary judgment for the Bank; the court of appeals reversed, holding that summary judgment should have been granted for Lenk.[1]

The first sentence of Section 34.301(b) of the Texas Finance Code states: "A cause of action for denial of deposit liability on a deposit contract without a maturity date does not accrue until the bank has denied liability and given notice of the denial to the account holder."[2] Lenk contends that her action against the Bank for allowing unauthorized withdrawals from Thompson's checking account until January 2001 accrued in June 2005, when she demanded that the Bank return the money, and the Bank refused. The Court agrees that this is Lenk's contention—"[Lenk] claimed the bank breached the deposit agreement by refusing her payment demand"[3]—and that it is correct—"the bank refused to pay general deposit funds, to the rightful account holder (Lenk), and so ... breached the deposit agreement."[4]

But Lenk's claim ignores the second sentence of Section 34.301(b): "A bank that provides an account statement or passbook to the account holder is considered to have denied liability and given the notice as to any amount not shown on the statement or passbook."[5] In *Jefferson State Bank v. Lenk*, we held that a bank that makes account statements available at its offices is considered to have denied liability for, and given notice of, unauthorized withdrawals from a deceased customer's checking account when a representative is appointed for the decedent's estate.[6] Lenk was appointed the representative of Thompson's estate in September 2003. Under Section 34.301(b), her action against the Bank accrued then, not in June 2005.

The Court observes that suit based on a claim that accrued in September 2003 would be timebarred[7] and faults the Bank

1. 360 S.W.3d 511 (Tex.App.-San Antonio 2008).

2. Tex. Fin.Code § 34.301(b).

3. *Ante* at 605.

4. *Ante* at 607.

5. Tex. Fin.Code § 34.301(b). Lenk relies heavily on a sentence in *Hodge v. Northern Trust Bank of Texas*, 54 S.W.3d 518, 526 (Tex.App.-Eastland 2001, pet. denied): "It is when the bank refuses a demand for payment of the general deposit that the bank breaches its relationship with the depositor." But the court was only speaking generally and not construing Section 34.301(b), which it noted did not apply because the case involved a certificate of deposit with a maturity date. *Id.* at 524.

6. 323 S.W.3d 146, 149–150 (Tex.2010) ("Accordingly, we conclude that in the event of a customer's death, banks can satisfy their [statutory] burden [to make account statements available to a customer] by retaining statements at the bank, but the customer's burden to report unauthorized signatures does not arise until an estate representative is appointed.").

7. UCC Section 4.406(f) provides that "[w]ithout regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer ... discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration." Tex. Bus. & Com.Code § 4.406(f). In *American Airlines Employees Federal Credit Union v. Martin*, 29 S.W.3d 86, 89 (Tex.2000), we held that this one-year repose period could be shortened by agreement to sixty days.

for not making that argument. But the Bank argues, and the Court specifically acknowledges, that Lenk's claim is for the Bank's refusal of her June 2005 demand. Lenk pleaded in her petition:

On June 4, 2005, [Lenk] made demand upon [the Bank] for the payment of [unauthorized withdrawals] from the account, and [the Bank] has failed and refused to pay over to [Lenk] the sums due and owing from the account.

\* \* \*

Under the terms of the depositor's agreement with [Thompson] and applicable law, [the Bank] was required to pay sums on deposit to [Lenk] on demand or to her order to such persons as she may direct. [The Bank] failed and refused to pay to [Lenk] the sums deposited upon her demand. Accordingly, [Lenk] is entitled to judgment in the amount of all sums which were deposited in the name of [Thompson] or his representative since the date of his death.

She asserted in her motion for summary judgment:

On June 4, 2005, [Lenk] made written demand upon [the Bank] for the sums deposited into [Thompson's] account, and [the Bank] has failed and refused to pay the sums deposited into the account to [Lenk].

[The Bank's] failure and refusal to pay to [Lenk] the sums deposited into the account of [Thompson] breached the terms of the depositor's agreement. Accordingly, [Lenk] is entitled to judgment. . . .

She argued to the court of appeals:

In Plaintiff's Original Petition, [Lenk] stated that [her] cause of action is based upon the requirements of the depositors agreement and [the Bank's] refusal to pay [Lenk] the sums deposited into Mr. Thompson's account after her demand.

Lenk could not have been clearer. She alleged that her June 2005 demand triggered her claim. She sued the Bank days later. An assertion by the Bank that her claim for its refusal of her demand was time-barred would have been frivolous.

The problem with the claim Lenk asserts is not that it is time-barred; the problem is that, under Section 34.301(b), the claim does not exist, and for good reason. Allowing a bank customer to create a cause of action merely by writing a demand letter, as Lenk contends, would circumvent all time limitations on claims for unauthorized withdrawals. That is what the Court has done in this case.

It bears comment that the Court hands Lenk a windfall. Not only does she recover the $3,000 Spillman stole from Thompson's account, Lenk recovers about $145,000 of the money that Spillman laundered through the account, using letters of administration the Bank had no reason to know were forged, on a claim filed nearly four years after the account was closed and nearly two years after she was on notice of all the transactions. But the consequences of the Court's misapplication of Section 34.301(b), in this case decided without argument, will be significant to the entire financial industry in Texas.

I respectfully dissent.