**AFFIRMED and Opinion Filed February 27, 2023**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-21-00970-CV**

**TONYA WARREN, EXECUTOR OF THE ESTATE OF IRENE C. WARREN, Appellant**

**V.**

**STATE FARM LLOYDS, Appellee**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-17052**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Rosenberg[1]
Opinion by Justice Nowell

This appeal involves an insurance dispute between appellant Tonya Warren, Executor of the Estate of Irene C. Warren[2] and appellee State Farm Lloyds. In her first two issues, Warren challenges the legal and factual sufficiency of the evidence to support the jury's findings that State Farm did not breach her insurance contract and did not violate the Texas Prompt Payment of Claims Act (TPPCA). In a third

---

[1] The Hon. Barbara Rosenberg, Justice, Assigned

[2] Irene Warren was alive at the time the water damage subject to this appeal occurred; however, she died during the claims process. Unless otherwise indicated, references to "Warren" refer to Tonya Warren.

issue, Warren argues State Farm made incurable, prejudicial jury arguments requiring reversal of the judgment. We affirm.

## Background

Warren moved back into her childhood home owned by her mother, Irene, after Irene began suffering from dementia. In January of 2018, Warren noticed a wet spot and a smell in the dining room near the microwave stand. She called Discount Drain to find the source of the leak.

On January 22, 2018, Anthony Burleson, the owner and a plumber with Discount Drain, inspected and performed moisture level tests on the home. The moisture meter indicated dwelling damage, and based on his hydrostatic testing of the sewer line, he told Warren the pipes should be replaced. He believed the moisture in the dining room originated from a "belly" in the sewer line in a bathroom. Although Burleson took numerous pictures of the pipes, he did not take a picture of the "belly," but instead merely noted it on a sketch he made of the home.

Despite the distance from the bathroom to the dining room, Burleson believed a water leak from the toilet surfaced in the corner of the dining room "because it could surface up anywhere, anywhere in the house." It did not necessarily have to surface in the bathtub or shower closest to the leak. However, Warren was unaware of any past problems with the toilet or bathtub area where Burleson allegedly located the leak.

During Burleson's inspection, he also determined the garbage disposal needed to be replaced. Warren paid for the replacement. Burleson pulled up carpet in the living and dining rooms, which Warren replaced at her own expense. Burleson also concluded he needed to dig under her home to replace the damaged pipes.

Warren contacted State Farm, and Mark Ogle received her claim on January 23, 2018. He immediately called Warren and told her to wait until State Farm completed its investigation before allowing Discount Drain to continue working. He also called Burleson and told him to stop any further work.

Ogle inspected the home on February 7, 2018. He observed that a small section of carpet had been removed near the exterior wall in the dining room, and the bottom of the cabinet under the kitchen sink had deteriorated from moisture. He later learned Discount Restoration removed the carpet and placed drying equipment in the kitchen and dining room to dry those areas.[3]

Ogle believed water traveled along the exterior wall under the cabinet into the corner of the dining room. He noticed the new garbage disposal, which indicated to him that the source of the water involved the sink. Warren confirmed the sink had leaked, and Burleson replaced the garbage disposal.

Ogle also observed the toilet, which Burleson alleged he removed to perform the hydrostatic test, was grouted to the bathroom floor. The toilet also had a crack,

---

[3] Despite the similarities in name, the record does not indicate Discount Drain and Discount Restoration are related.

and Ogle was concerned pulling the toilet out would cause further damage to it and the grout. He did not notice any damage to the floor, baseboard, wall, or any other part of the bathroom. Based on Ogle's inspection, he did not believe Burleson performed a hydrostatic test by removing the toilet and running a camera down the pipe.

Ultimately, Ogle did not find any evidence of water damage caused by a leak in a sewer line. He disagreed with Burleson's conclusion that a broken pipe under the home caused the water damage because the water would have to travel "against gravity through three feet of soil through the slab foundation" to cause the water damage in the kitchen and dining room.

State Farm sent a letter to Warren on February 8, 2018 with a billing estimate and payment for the carpet and damage to the cabinet; however, State Farm explained repair to the plumbing system itself was not covered under the policy ("the accidental direct physical loss to the building is what was covered, which is damage to the cabinets, the carpeting, so forth"). State Farm also paid for Discount Drain's hydrostatic test and the camera inspection. Despite Warren's belief to the contrary, State Farm's policy did not provide coverage for tunneling under her home, only coverage to tear into that particular part of the home to access the leak.

State Farm subsequently hired Flow Plumbing to conduct independent testing of the sewer line. When plumbers arrived on February 9, 2018, Discount Drain was present and tunneling under the home. State Farm contacted Warren that day and

advised her Discount Drain needed to stop work so that Flow Plumbing could proceed with its plumbing testing. State Farm advised Warren that State Farm's inability to confirm whether or not there were leaks present under the home prior to repairs being made would impact coverage. Warren indicated she would stop Discount Drain from working and allow Flow Plumbing to move forward with testing. However, when Flow Plumbing returned on February 12, 2018, they discovered Discount Drain had cut and removed sewer lines. Discount Drain's actions prevented Flow Plumbing from completing their tests.

On February 22, 2018, Ogle sent Warren a status letter regarding the claim. In the letter, Ogle noted he reviewed the policy with Warren on January 23 and February 7, 2018. He explained what he discovered in his February 7 inspection. He stated his attempts to discuss the findings and necessity of the restoration process conducted by Discount Restoration on January 22, 2018 were unsuccessful. The letter also detailed Flow Plumbing's thwarted attempts to test the sewer pipes.

State Farm sent another letter on February 28, 2018 stating it received the water mitigation invoice from Discount Restoration, but the invoice did not reflect an accurate scope of completed work based on Ogle's inspection; therefore, he completed an estimate reflecting the mitigation efforts based on his February 7, 2018 inspection. He enclosed a copy for Warren's review and a $913.20 payment. This amount represented the replacement cost value estimate ($10,552.31) minus certain depreciations, her deductible, and a prior claim payment of $2,968.02. Tonya

testified she only received the $913.20 payment from State Farm. Ogle testified he never talked to Warren about the estimate and payment, and she never questioned it prior to filing this lawsuit alleging State Farm unfairly underpaid her insurance claim.

The jury entered a take-nothing judgment in favor of State Farm. This appeal followed.

## Sufficiency of the Evidence

In her first issue, Warren argues the evidence is legally and factually insufficient to support the jury's finding that State Farm did not breach the insurance contract. In her second issue, Warren alleges the evidence is legally and factually insufficient to support the jury's finding that State Farm did not violate the TPPCA. State Farm responds the evidence, viewed under the applicable standards of review, is sufficient to support the jury's take-nothing judgment in its favor.

### A. Preservation of Error

When a party fails to preserve error in the trial court or waives an argument on appeal, an appellate court may not consider the unpreserved or waived issue. *See Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 605 (Tex. 2012). Thus, we must first determine whether Warren properly preserved her sufficiency arguments despite neither party discussing error preservation.

To preserve a legal sufficiency challenge for appeal following a jury trial, an appellant must: (1) move for an instructed verdict; (2) move for judgment

–6–

notwithstanding the verdict; (3) object to the submission of a jury question; (4) move to disregard the jury finding; or (5) move for a new trial. *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991); *Hollingsworth v. Parklane Corp.*, No. 05-19-01576-CV, 2021 WL 1290735, at *3 (Tex. App.—Dallas Apr. 7, 2021, no pet.) (mem. op.). To preserve a factual sufficiency challenge from a jury trial, a party must raise it in a motion for new trial. TEX. R. CIV. P. 324(b)(2); *Hollingsworth*, 2021 WL 1290735, at *3.

Warren filed a motion for directed verdict and a motion for judgment notwithstanding the verdict challenging the jury's rejection of her breach of contract and TPPCA claims. She also challenged these findings in a motion for new trial "because the evidence proves conclusively, as a matter of law" she was entitled to certain damages. Warren did not challenge the factual sufficiency of the evidence in her motion for new trial as required under rule 324(b)(2); therefore, we may not consider her argument. *See* TEX. R. CIV. P. 324(b)(2); *see also Lenk*, 361 S.W.3d at 605. Accordingly, our review is limited to legal sufficiency of the evidence.

## B. Standard of Review

When a party attacks the legal sufficiency of an adverse finding on an issue on which she had the burden of proof, she must demonstrate on appeal the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). When reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the

finding, while ignoring all evidence to the contrary. *Id*. Anything more than a scintilla of evidence is legally sufficient to support the finding. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc*., 960 S.W.2d 41, 48 (Tex. 1998). If there is no evidence supporting the finding, we then examine the entire record to determine if the contrary position is established as a matter of law. *Dow Chem. Co.*, 46 S.W.3d at 241. The point of error is sustained only if the contrary proposition is conclusively established. *Id*.

We remain mindful that the trier of fact is the sole judge of witness credibility and the weight to be given their testimony. *Oncor Elec. Delivery Co. LLC v. Quintanilla*, No. 05-19-01331-CV, 2022 WL 9809712, at *3–4 (Tex. App.—Dallas Oct. 17, 2022, pet. filed) (mem. op.). The trier of fact may choose to believe one witness and disbelieve another, and we must not impose our opinion to the contrary, as long as the trier of fact's resolution "falls within this zone of reasonable disagreement." *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

### 1. Breach of Contract

To establish a breach of contract, a plaintiff must prove (1) the existence of a valid contract, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach of contract, and (4) the plaintiff's damages as a result of the breach. *See Old Am. Ins. Co. v. Lincoln Factoring, LLC*, 571 S.W.3d 271, 282 (Tex. App.—Fort Worth 2018, no pet.). An insurance policy is a contract. *Id*. Thus, in the context of an insurance policy, a plaintiff must prove the existence of a valid

insurance policy covering the denied claim and entitlement to money damages on that claim. *Davis v. Nat'l Lloyds Ins. Co.*, 484 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

The existence of a valid insurance policy was undisputed; however, Warren argues State Farm breached the policy's five-day loss payment provision by failing to pay at least $2,968.02 in actual cash benefits by March 1, 2018. State Farm responds the documentary evidence, along with Burleson's inconsistent testimony, which the jury could have found not credible, was legally sufficient to support the jury's finding that State Farm did not breach the contract.

Ogle testified he inspected the home and determined a leak from the garbage disposal caused water damage to the kitchen cabinet and some surrounding carpet. This damage was covered under the policy. However, Ogle explained there was no coverage for tunneling to access pipe leaks under a slab. In his February 22, 2018 letter, Ogle stated, "There is no coverage for the plumbing repairs Discount Drain is billing you for since we were unable to confirm the existence of any leaks under the home prior to the repairs being done." Ogle testified he advised Warren and Discount Drain not to proceed with any repairs until State Farm completed its independent inspection. Despite the warning, Warren conceded Discount Drain continued working. That work, which included pulling out and removing pipes, prevented Flow Plumbing from conducting its tests.

The "Loss Payment" clause in the policy stated, in relevant part, "If we notify you that we will pay your claim, or part of your claim, we must pay within 5 business days after we notify you." After State Farm's inspection on February 7, 2018, Ogle determined the "Summary for Coverage A" replacement cost value for the water damage was $10,552.31. After depreciation, applying Warren's deductible, and "less prior claim payment" of $2,968.02, the net actual cash value payment totaled $913.20. It is undisputed Warren received $913.20. Although Warren testified she never received any other payment from State Farm, the documentary evidence indicates State Farm paid $2,968.02 toward the claim some time before February 28, 2018. Moreover, Ogle testified State Farm reimbursed Warren for that amount.

After examining the record for evidence supporting the jury's finding, while ignoring evidence to the contrary, we conclude more than a scintilla of evidence exists to support the jury's finding that State Farm did not breach Warren's insurance contract. *See Dow Chem. Co.*, 46 S.W.3d at 241; *Formosa Plastics Corp. USA*, 960 S.W.2d at 48. We overrule Warren's first issue.

## 2. **Violations of the TPPCA**

In her second issue, Warren argues the evidence is legally insufficient to support the jury's finding that State Farm did not violate the TPPCA (section 542 of the Texas Insurance Code). Specifically, she contends State Farm received all items, statements, and forms required to secure final proof of loss by February 8, 2018, but

failed to timely pay $913.20 by the required statutory deadline of February 26, 2018, and State Farm failed to pay $2,968.02.

The TPPCA establishes a number of deadlines for insurance companies to process claims and penalizes its failure to meet the deadlines by assessing interest on the claim at the rate of eighteen percent per annum and ordering payment of the insured's attorney's fees. *See Crayton v. Homeowners of Am. Ins. Co.*, No. 02-20-00037-CV, 2020 WL 7639582, at *4 (Tex. App.—Fort Worth Dec. 23, 2020, no pet.) (mem. op.) (citing TEX. INS. CODE ANN. §§ 542.051–.061). To successfully maintain a TPPCA claim, a party must establish (1) a claim under an insurance policy; (2) the insurer's liability for the claim; and (3) the insurer's failure to follow one or more sections of the insurance code with respect to the claim. *See Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001).

Warren first asserts State Farm violated section 542.055(a)(3), which provides that "not later than the 15th day . . . after the date an insurer receives notice of a claim, the insurer shall request from the claimant all items, statements, and forms that the insurer reasonably believes, at the time, will be required from the claimant." TEX. INS. CODE ANN. § 542.055(a)(3). Warren reported the plumbing leak on January 18, 2018; therefore, the deadline for State Farm to request information it reasonably believed would be required from her was February 2, 2018. She alleges State Farm did not request anything from her until Ogle's inspection on February 7, 2018; therefore, State Farm violated section 542.055(a)(3). We disagree.

Ogle testified State Farm received the claim on January 18, 2018 and received information from Discount Drain on January 22, 2019. The information included a diagnostic report, an estimate to dig an eighteen-foot tunnel for approximately $9,500, and a diagram showing where Discount Drain believed repairs were needed. Ogle did not testify he was missing any information he reasonably believed he needed at that time from Warren to proceed with her claim, and Warren has not indicated otherwise. After examining the record for evidence supporting the jury's finding, while ignoring evidence to the contrary, we conclude more than a scintilla of evidence exists to support the jury's finding State Farm did not violate section 542.055(a) of the insurance code. *See Dow Chem. Co.*, 46 S.W.3d at 241; *Formosa Plastics Corp. USA*, 960 S.W.2d at 48.

Warren next contends State Farm violated section 542.056 by waiting until February 28, 2018 to pay $913.20 because the statutory deadline was February 26, 2018. We reject Warren's argument for two reasons.

First, section 542.056 provides "an insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th *business day* after the date the insurer receives all items, statements, and forms by the insurer to secure final proof of loss." TEX. INS. CODE ANN. § 542.056(a) (emphasis added). Warren's calculation of the February 26, 2018 deadline appears to be premised on State Farm receiving all necessary information by February 8, 2018 and then counting forward fifteen days, excluding Sundays. However, the insurance code defines "business

–12–

day" as "a day other than Saturday, Sunday, or holiday recognized by this state." *Id*. §542.051(1). Assuming State Farm received all information by February 8, 2018, and excluding Saturdays, Sundays, President's Day (February 19, 2018) and Texas Independence Day (March 2, 2018), State Farm's deadline to secure final proof of loss and pay $913.20 was March 5, 2018. State Farm sent a letter and enclosed payment for $913.20 on February 28, 2018.

Second, the record indicates State Farm had not received all necessary information by February 8, 2018. Ogle learned during his February 7, 2018 inspection that Discount Restoration had already removed a portion of the carpet and pad in the dining room. His attempts to discuss the findings and necessity of the work done by Discount Restoration were not successful at that time. Ogle also explained he arranged for Flow Plumbing to conduct its testing on February 9 and February 12 but on both occasions, the company was unable to perform testing because of Discount Drain. This is more than a scintilla of evidence supporting a finding that State Farm did not have all the required information to secure final proof of loss until February 12, 2018, thereby making State Farm's deadline March 7, 2018. Warren received payment on February 28, 2018. After examining the record for evidence supporting the jury's finding, while ignoring evidence to the contrary, we conclude more than a scintilla of evidence exists to support the jury's finding State Farm did not violate insurance code section 542.056. *See Dow Chem. Co.*, 46 S.W.3d at 241; *Formosa Plastics Corp. USA*, 960 S.W.2d at 48.

Finally, Warren argues State Farm violated section 542.057 because it never paid $2,968.02. Section 542.057 states, in relevant part, "if an insurer notifies a claimant under section 542.056 that the insurer will pay a claim or part of a claim, the insurer shall pay the claim not later than the fifth business day after the date notice is made." TEX. INS. CODE ANN. § 542.057(a). Ogle testified State Farm reimbursed Warren for $2,968.02, and the February 28, 2018 letter also references this payment in the "Summary for Coverage A" as "Less Prior Claim Payment." Although Warren testified she never received this payment, the statute does not require the insured receive payment. The statute requires the insurer pay the claim. *See id.* (stating insurer "shall pay claim"). The jury was entitled to resolve conflicts in the testimony based on its evaluation of the witnesses' credibility. The record contains more than a scintilla of evidence to support a finding that State Farm paid $2,968.02, and therefore, did not violate insurance code section 542.057(a).

Having considered and rejected each of Warren's TPPCA challenges, we overrule her second issue.

## Jury Argument

In Warren's third issue, she argues State Farm's counsel made incurable, prejudicial jury arguments. State Farm responds Warren failed to preserve her issue for review; however, even if she preserved the issue, there is no evidence the jury based its verdict on an improper argument.

Appellate complaints of improper jury argument must ordinarily be preserved by a timely objection and request for an instruction to disregard the improper remark. *See Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009); *see also* TEX. R. APP. P. 33.1. However, an incurable jury argument complaint may be asserted and preserved in a motion for new trial, even without a complaint and ruling during the trial. *Phillips*, 288 S.W.3d at 883; *DeWolf v. Kohler*, 452 S.W.3d 373, 396–97 (Tex. App.—Houston [14th Dist. 2014, no pet.) (concluding improper jury arguments not preserved when party failed to ask for an instruction to disregard and failed to include them in motion for new trial); TEX. R. CIV. P. 324(b)(5).

Warren cites five separate instances of incurable, prejudicial jury arguments during State Farm's closing argument. She did not object to four of these statements, and the trial court did not rule on the one objection she made to a fifth statement. *See* TEX. R. CIV. P. 33.1. Therefore, for this Court to consider her arguments on appeal, Warren must have raised them in her motion for new trial. TEX. R. CIV. P. 324(b)(5); *Phillips*, 288 S.W.3d at 883. In addition, her complaint raised on appeal must comport with the objection made to the trial court in her motion for new trial. *Bonds v. Mayes*, No. 05-01-01593-CV, 2002 WL 1981375, at *2 (Tex. App.—Dallas Aug. 29, 2002, no pet.).

Warren broadly referenced two "incurable" arguments in her motion for new trial. These included statements in which State Farm's counsel intimated that "you" (meaning the jury) should not have to pay "for what Burleson of Discount Drain did

–15–

to Ms. Warren." Warren raised these "incurable" statements in her appellant's brief, but argued they show State Farm "intentionally invok[ed] bias based on Anthony Burleson of Discount Drain's race or ethnicity." She further argued in her brief the "discriminatory improper" jury argument "strikes at the heart of the adversarial process or appeals to deep-seated and universally execrated prejudice" because Burleson is a black plumber working in underserved communities. Warren did not argue in her motion for new trial that State Farm made incurable arguments based on Burleson's race. Thus, her argument raised on appeal does not comport with her argument to the trial court. Because Warren's complaint does not comport with those raised in her motion for new trial, it is waived. *Bond*, 2002 WL 1981375, at *2.

Even assuming Warren preserved her issue, the record is devoid of any reference to race other than Burleson testifying he learned the plumbing trade from his father, the first Black master plumber in Texas. State Farm neither mentioned race during its closing argument nor implied Burleson's race played any role in its handling of Warren's insurance claim.

To the extent State Farm's counsel indicated the jury should not have to pay for Burleson's actions, the statement was curable, meaning it was not "so inflammatory and prejudicial that its harmfulness could not be eliminated by instructing the jury to disregard it." *Hopkins v. Phillips*, No. 05-18-01143-CV, 2019

–16–

WL 5558585, at *2 (Tex. App.—Dallas Oct. 29, 2019, pet. denied) (mem. op.). We overrule Warren's third issue.

## Conclusion

The trial court's judgment is affirmed.

/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

210970F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TONYA WARREN, EXECUTOR
OF THE ESTATE OF IRENE C.
WARREN, Appellant

No. 05-21-00970-CV          V.

STATE FARM LLOYDS, Appellee

On Appeal from the 68th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-17052.
Opinion delivered by Justice Nowell.
Justices Partida-Kipness and
Rosenberg participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee STATE FARM LLOYDS recover its costs of this appeal from appellant TONYA WARREN, EXECUTOR OF THE ESTATE OF IRENE C. WARREN.

Judgment entered this 27th day of February 2023.

–18–