JEFFERSON STATE BANK,
Petitioner,

v.

Christa C. LENK, Administratrix
of the Estate of Mickey Carl
Marcus, Respondent.

No. 09–0269.

Supreme Court of Texas.

Argued Feb. 16, 2010.

Decided Aug. 27, 2010.

Ellen B. Mitchell, Cox Smith Matthews, David B. West, Cox & Smith Incorporated, James Michael Oliveros, Ross Molina Oliveros, P.C., San Antonio, TX, for Petitioner.

S. Mark Murray, S. Mark Murray, Inc., Don Krause, Bayne Snell & Krause, San Antonio, TX, for Respondent.

Harry Shannon Phillips Jr., Independent Bankers Assoc. of TX, Austin, TX, for Amicus Curiae-Independent Bankers.

B. Scott Daugherty, Texas Bankers Association, Austin, TX, for Amicus Curiae-TX Bankers Assoc.

Justice GUZMAN delivered the opinion of the Court.

■ Section 4.406 of the Texas Business and Commerce Code requires customers to timely notify their banks of unauthorized transactions. Today, we decide when that duty arises for estate administrators who are appointed after the unauthorized transactions occur on the estate's account. The unauthorized transactions in this case took place approximately two years before the appointment of the administrator, who sued the bank to recover the money twenty-one months after her appointment. Section 4.406, however, precludes a customer from bringing a claim based on an unauthorized transaction if the customer fails to report the transaction to the bank within one year—contractually shortened to sixty days in this case—after the bank provides the customer with the relevant account statement.[1] Here, although the bank never mailed any account statements to the administrator, it did hold the statements at its office, and the administrator could have obtained them at any time after the appointment. We thus hold that the statute of repose[2] in section 4.406 begins to run once a court appoints an administrator. In this case, the repose period had expired before the administrator brought suit almost two years later.[3]

## I. Background

In March 2000, Mickey Marcus died with over $22,000 in his account at Jeffer-

---

**1.** Under section 4.406, a customer has one year to notify the bank of unauthorized signatures. TEX. BUS. & COM.CODE § 4.406(f). In *American Airlines Employees Federal Credit Union v. Martin*, we held that the one-year repose period could be reduced by agreement to sixty days. 29 S.W.3d 86, 89 (Tex.2000). The account agreement here reduces the notification period to sixty days.

**2.** Both parties describe section 4.406(f) as a statute of repose, and we agree with this characterization. A statute of repose runs from a specific date without regard to the accrual of a cause of action. *See Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex.2003); *Trinity River Auth. v. URS Consultants, Inc.-*

*Tex.*, 889 S.W.2d 259, 261 (Tex.1994). A statute of repose is therefore a substantive definition of rights, rather than a procedural limitation. *Id.*(quoting *Lamb v. Wedgewood S. Corp.*, 308 N.C. 419, 302 S.E.2d 868, 872 (1983)). Courts consistently characterize this provision of the Uniform Commercial Code as a statute of repose rather than a statute of limitations, *see Peters v. Riggs Nat'l Bank*, 942 A.2d 1163, 1167 (D.C.Cir.2008), and we will do so as well.

**3.** Because our holding on this issue bars all of the administrator's claims, we need not address whether Texas Probate Code section 186 also provides a defense to the Bank.

son State Bank. The following month, Melvyn Spillman presented the Bank with fraudulent letters of administration purporting to appoint him as administrator of the Marcus Estate. The Bank, relying on what it believed to be valid letters, gave Spillman access to the Marcus account. Throughout the next several months, Spillman withdrew most of the account balance. By January 2001, just over $1,000 remained in the account. Spillman was arrested for perpetrating this fraud and several others.

No estate administration was pending for Marcus during any of these events. In fact, Marcus had no estate representative until September 2003, when the probate court appointed Christa Lenk as the administrator for the Marcus estate. Lenk was aware of Spillman's fraud on the Estate at the time of her appointment.

Following her appointment, there was no contact between Lenk and the Bank for almost two years. The Bank, presumably unaware of Lenk's appointment as administrator, never informed Lenk about Marcus's account or sent account statements to her, though it did mail some statements to Spillman and retained the statements at its offices. Lenk, for her part, knew of Marcus's account at the Bank by February 2004, but she did not contact the Bank until June 2005.[4] That month, she sent the Bank a written demand for payment in the amount of $185,785—the amount allegedly withdrawn by Spillman. When the

Bank refused to pay, Lenk sued to recover the funds.

Among other defenses, the Bank asserted that Lenk failed to timely notify the Bank of the unauthorized transactions as required by section 4.406 of the Business and Commerce Code. Lenk responded that the Bank failed to satisfy its initial obligation to send or make available the account statements as required by section 4.406(a). Both parties ultimately moved for summary judgment. The trial court granted the Bank's motion, denied Lenk's motion, and entered final judgment in favor of the Bank. The court of appeals reversed, holding that retaining account statements at the Bank was insufficient to fulfill the Bank's section 4.406 duty. 323 S.W.3d 199.

■ We granted the Bank's petition for review. 53 Tex. Sup.Ct. J. 115 (Nov. 20, 2009). When both sides move for summary judgment, and the trial court grants one motion and denies the other, "reviewing courts consider both sides' summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London* (Tex.2010).

## II. Business and Commerce Code section 4.406

■ The Business and Commerce Code precludes a customer "from asserting against the bank [an] unauthorized signa-

4. It is unclear when Lenk first became aware of Marcus's account at the Bank, though she knew of the account by February 2004 at the latest. In September 2003, she filed a claim with the receiver appointed to hold and distribute Spillman's assets. The following February, the receiver released documents to Lenk that included several bank statements (April–June 2000) showing activity on the account after Marcus's death. The receiver also sent a copy of a Jefferson State Bank check from an account in the name of "Mickey Carl Marcus Estate. Melvyn Morris Spillman, administrator." A funeral home for whom Lenk filed a creditor's application for letters of administration was also aware of a potential account at the Bank, but it is unclear whether the funeral home made Lenk aware of the account.

ture" if the customer does not timely "discover and report the customer's unauthorized signature" after the bank "sends or makes available to a customer a statement of account." TEX. BUS. & COM.CODE § 4.406(a), (f). Here, the issue is whether the Bank satisfied its initial burden to send or make available the statement to its customer. In the context of deceased customers, we hold that (1) a bank satisfies its burden by retaining account statements for retrieval by the estate administrator, and (2) the repose period begins to run once an administrator is appointed. Because Lenk was appointed in September 2003 but did not demand payment from the Bank until June 2005, we conclude that section 4.406 precludes her from asserting Spillman's unauthorized signatures against the Bank.[5]

■ As an initial matter, we reject the Bank's argument that it satisfied its burden by sending statements to Spillman. Even assuming, without holding, that the Bank could have relied on the fraudulent letters, that reliance would not have made Spillman the Bank's customer. Thus, sending Spillman the statements could not fulfill the Bank's obligation to provide account statements "to a customer." § 4.406(a).

■ But we do agree with the Bank's argument that it made the statements available by retaining them for the estate representative. When a bank is aware of a customer's death, it has no means of satisfying its section 4.406 burden other than by retaining the statements.[6] Yet a bank should not be allowed to satisfy its burden until there is an appointed representative. Otherwise, the repose period could run without the opportunity for a customer to review the statements and discover the fraud. Cf. Am. Airlines Employees Fed. Credit Union v. Martin, 29 S.W.3d 86, 92 (Tex.2000) (noting that the Code allocates liability to the party best able to prevent the loss). Once an estate administrator is appointed, however, a bank should not be faulted for failing to further send or make available the statements. After all, the bank will be unaware of the administrator's existence, and administrators are vested with the authority and duty to act on the estate's behalf. See TEX. PROB.CODE § 37 (noting that once letters are issued, the "administrator shall have the right to possession of the estate as it existed at the death of the ... intestate ... and ... shall recover possession of and hold such estate in trust to be disposed of in accordance with the law"); id. § 232 ("The personal representative of an estate, immediately after receiving letters, shall collect and take into possession the personal property, record books, title papers, and other business papers of the estate...."). Accordingly, we conclude that in the event of a customer's death, banks can satisfy their section 4.406 burden by retaining statements at the bank,

---

**5.** The Bank also argues that Lenk's June 2005 demand for payment failed to report specific unauthorized signatures. Because Lenk's demand occurred after the repose period had expired, we do not address this issue. Lenk did not contact the Bank at all within sixty days of her appointment, so it follows that she did not report unauthorized signatures within sixty days.

**6.** We do not answer how a bank satisfies its § 4.406 burden when it is unaware of the customer's death as that issue is not before us. Cf. TEX. BUS. & COM CODE § 4.405 ("Neither death nor incompetence of a customer revokes the authority to accept, pay, collect, or account until the bank knows of the fact of death...."); Mac v. Bank of Am., 76 Cal. App.4th 562, 90 Cal.Rptr.2d 476, 481 (1999) (holding that a bank does not satisfy its burden by mailing statements to a deceased customer).

but the customer's burden to report unauthorized signatures does not arise until an estate representative is appointed.[7]

■ Lenk was appointed as the estate administrator on September 2, 2003. At that time, she was vested with the authority and duty to act on behalf of the estate. The Bank acknowledges it would have provided her with statements had she inquired. Yet Lenk waited almost two years after her appointment to contact the Bank. Allowing Lenk to wait that long to sue after making no attempt to obtain the account statements would flout the Legislature's goal of " 'promoting certainty and predictability in commercial transactions.' " *Am. Airlines Employees*, 29 S.W.3d at 92 (quoting *Putnam Rolling Ladder Co. v. Mfrs. Hanover Trust Co.*, 74 N.Y.2d 340, 547 N.Y.S.2d 611, 546 N.E.2d 904, 908 (1989)).

To be sure, this rule requires administrators to act swiftly in handling the estate's banking records. But as mentioned above, administrators have a duty to take control of the estate's property. Lenk could have readily identified the unauthorized transactions had she diligently obtained the bank statements. Because she was the only person authorized to act on the Marcus Estate's behalf, any activity on the Marcus account after his death (e.g., Spillman's withdrawals) would have immediately alerted Lenk of potentially fraudulent activity.

We also acknowledge that administrators may be unaware of the decedent's bank accounts, especially when the dece-

dent has left little personal information or maintained poor banking records. *Cf.* § 4.406 cmt. 1 ("The policy decision is that accommodating customers who do not keep adequate records is not as desirable as accommodating customers who keep more careful records."). The statute's focus on certainty and predictability trumps this concern, especially considering that the administrator's appointment could come many years after the customer's death, as happened here. With living customers, the statute sets a one-year repose period, which can be contractually shortened by agreement, as happened here. Our holding, which benefits customers by delaying the start of the repose period, has the effect of extending the bank's potential liability well beyond one year. We see no reason to extend it even further by delaying the start of the repose period until the administrator becomes aware of the account.

### III. Conclusion

The statute of repose in section 4.406 of the Business and Commerce Code bars Lenk's claims because she failed to notify the Bank of any unauthorized transactions within sixty days of being appointed estate administrator. Accordingly, we reverse the court of appeals' judgment and render judgment in favor of the Bank.

---

**7.** Our holding does not conflict with *First Citizens Bank v. All–Lift of Georgia Inc.*, 251 Ga.App. 484, 555 S.E.2d 1 (2001), the only case cited by the parties that addresses this issue. In that case, the court held that banks cannot satisfy the section 4.406 burden by merely retaining the statements at the bank (absent the customer's request to do so). *Id.* at 3. But it did not consider the important question that arises when the customer is deceased. Instead, it addressed a living customer to whom the bank could send the statements. As stated above, when the customer has died, a bank's only option is to retain the statements and make them available when the personal representative requests them.