In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00113-CV**

_____

**CAREN J. COFFEY, INDEPENDENT EXECUTRIX OF THE
ESTATE OF ELTON BOVEY, Appellant**

**V.**

**BANK OF AMERICA, Appellee**

---

**On Appeal from the County Court at Law No. 2
Montgomery County, Texas
Trial Cause No. 11-02-01592-CV**

---

**MEMORANDUM OPINION**

Appellant, Caren J. Coffey, Independent Executrix of the Estate of Elton Bovey, appeals the trial court's final summary judgment in favor of appellee, Bank of America. In two issues, Coffey challenges the summary judgment. We affirm the trial court's judgment.

I. BACKGROUND

Elton Bovey married Edna Gayle Bovey and moved to Texas in the summer of 2007. In August 2007, Elton opened two deposit accounts at Bank of America. He signed

1

the Bank's personal signature card forms to open a checking account and a money market account. Both signature cards expressly incorporate Bank of America's Deposit Agreement and Disclosures. Both signature cards designate Edna as the payable on death ("POD") beneficiary for each respective account. While Elton was still alive, 73 of the 75 contested checks in this case were drawn against his accounts. During this time, Bank of America regularly provided statements of the accounts to Elton's address of record. There is no evidence that Elton ever notified Bank of America that it had paid a check without his authorization.

Elton died on June 19, 2008. The day after his death, Edna signed new signature cards for each account and wrote a check from one of the accounts, signing the check, "Edna G. Bovey P.O.A. Elton Bovey." On August 5, 2008, she wrote a second check from one of the accounts and signed it, "Edna Gayle Bovey." On September 30, 2008, Edna was appointed Independent Executrix of Elton's estate pursuant to a will signed by Elton in May 2008. Elton was survived by Edna, his widow; his two adult children, Caren Coffey and Ron Bovey; and his two adult stepchildren, Patricia Cellar and Larry Allred.

Coffey, Allred, and Cellar contested the issuance of Letters Testamentary to Edna and contested the validity of the will submitted to probate. During the will contest, Coffey, as an heir and person interested in Elton's estate, subpoenaed bank records relating to Elton's accounts with Bank of America. In December 2008, Bank of America responded to the subpoena and produced records to Coffey, including copies of all the checks underlying Coffey's claims in this case. Coffey testified that she received copies

of the account records in December 2008, and that she personally reviewed the records by May 29, 2009. Coffey testified that Elton was found to have been incompetent for purposes of executing the May 2008 will. Ultimately, Coffey replaced Edna as executor of Elton's Estate.  She was qualified as executor on July 19, 2010.

Coffey filed suit against Bank of America Corporation on July 28, 2010, on behalf of Elton's estate. She ultimately non-suited Bank of America Corporation and filed an amended petition against Bank of America, N.A. on September 1, 2010. Coffey alleged that in the period before Elton's death, the bank wrongfully paid items drawn on the account because they were not signed by the account holder, Elton. She sought payment for all items charged to Elton's account that were not signed by Elton or otherwise not properly payable under section 4.402 of the Texas Business and Commerce Code. Bank of America answered the suit and served written discovery requests. Coffey responded to the requests on October 5, 2010, and identified by number, date, and amount, the individual transactions allegedly paid without Elton's authorization.

Bank of America filed a motion for summary judgment asserting  that Coffey's claims were "statutorily and contractually [precluded] as a matter of settled law on application of Texas UCC § 4.406(f)'s one-year condition precedent as contractually shortened in the Deposit Agreement's 60-day notice period."  Bank of America claimed that Elton and Coffey failed to timely discover and report any alleged unauthorized checks and debit to Bank of America, thereby precluding any claims. The trial court granted summary judgment in favor of Bank of America. This appeal followed.

3

## II. STANDARD OF REVIEW

In a traditional motion for summary judgment, the movant has the burden to show that there are no genuine issues of material fact, and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). "We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We resolve every doubt in favor of the non-movant and we take all evidence favorable to the non-movant as true. *Fort Worth Osteopathic Hosp., Inc. v. Reese,* 148 S.W.3d 94, 99 (Tex. 2004).

When a defendant moves for summary judgment, it must either disprove at least one essential element of the plaintiff's cause of action, or plead and conclusively establish each essential element of its affirmative defense. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex. 1995). If the defendant produces sufficient evidence to establish its right to summary judgment, then the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). "Because the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211,

216 (Tex. 2003); *see also Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

### III. GROUNDS FOR SUMMARY JUDGMENT

In its motion for summary judgment, the Bank asserted that the Texas Uniform Commercial Code (the U.C.C.) precluded Coffey from asserting her claims in this case because she failed to provide timely and adequate notice to the Bank regarding the unauthorized transactions. Section 4.406(f) of the U.C.C. states in part,

> Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer…discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration. . . .

Tex. Bus. & Com. Code Ann. § 4.406(f) (West 2002).[1]  "[T]he purpose of section 4.406 is to place the burden on those best able to detect unauthorized transactions so that further unauthorized transactions can be prevented[.]" *Am. Airlines Emps. Fed. Credit Union v. Martin*, 29 S.W.3d 86, 94 (Tex. 2000) (footnote omitted). The Texas Supreme Court has determined that this burden should be on the customer because the customer is most familiar with the underlying transaction. *Id.*

A.  The Bank's Obligation

A customer's burden to detect and report an unauthorized signature or altercation is triggered only after the bank has provided its customer with sufficient information for

---

[1] Title 1 of the Texas Business and Commerce Code may be cited as the Uniform Commercial Code.  Tex. Bus. & Com. Code Ann. § 1.101(a) (West 2009).

the customer to detect the unauthorized transaction. *Id.* Section 4.406 explains how the Bank meets this obligation to give the customer sufficient information:

> A bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid. The statement of account provides sufficient information if the item is described by item number, amount, and date of payment. . . .

Tex. Bus. & Com. Code Ann. § 4.406(a).

In this case, summary judgment evidence established that it is the Bank's regular practice to mail monthly statements of account to its account holders. Copies of monthly statements for the accounts at issue in this case, dating from August 24, 2007 to August 21, 2008, were made a part of the summary judgment record before the trial court.[2] These statements of account identify each debit by date, amount, and item number. The statements reflect that the Bank mailed the statements to Elton's address, as indicated on his signature card. The statements further reflect that the Bank mailed the statements to Edna, as the POD beneficiary, after Elton's death. We conclude these statements and the regular provision of same would have provided Elton, and later Edna, sufficient information to detect any alleged unauthorized transaction that may have occurred within that time frame. *See Am. Airlines Emps.*, 29 S.W.3d at 94; *see also* Tex. Bus. & Com. Code Ann. § 4.406(a). Since the Bank provided uncontroverted summary judgment

---

[2] Coffey complains of numerous check transactions drawn on the account between August 28, 2007 and August 5, 2008, and one-debit transaction conducted in June 2008.

6

evidence that it sent and made available monthly account statements to Elton, and then to his POD, Edna, we conclude that Elton and subsequently Edna had a duty to discover and report unauthorized transactions to the Bank in a timely fashion.

B. The Customer's Duty

After the Bank has given its customer sufficient information to discover any unauthorized transactions, the customer has a duty to promptly examine his bank statement and report to the bank the discovery of any unauthorized signature or alteration. *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 561-62 (Tex. 1984) (citing Tex. Bus. & Com. Code Ann. §4.406(a)). The customer generally has one year to discover and report any unauthorized transactions to the bank. Tex. Bus. & Com. Code Ann. § 4.406(f). If the customer fails to timely discover and notify the bank, then the customer is precluded from asserting any claims against the bank for the unauthorized signature or alteration. *Id.*

Coffey argues that she timely notified the Bank of the unauthorized items. She contends that the one-year repose period to contest the items started running July 19, 2010, the day she was vested with authority to act as executor of Elton's estate. In support of her argument, Coffey relies on *Jefferson State Bank v. Lenk*, 323 S.W.3d 146 (Tex. 2010). In *Jefferson State Bank*, the transactions at issue occurred after the death of the customer, and the transactions were not included on any statement of account sent to the customer. *Id.* at 147-48. A man, pretending to be the administrator of the estate of the deceased customer, presented the bank with fraudulent letters of administration. *Id.* at

7

148. The bank believed the letters valid and gave the purported administrator access to the account, thereby also allowing a number of unauthorized transactions to occur. *Id.* The account holder died in March 2000 and during the time that the fraud occurred, no estate administration was pending. *Id.* In September 2003, an executor was appointed. At the time of the appointment, the executor had been made aware of the fraud on the estate. *Id.* The bank, presumably unaware of the executor's appointment, did not inform the executor about the account or send statements to the executor, but the bank did retain statements at its office for the estate representative. *Id.* It was unclear when the executor learned of the account at the bank, but she knew of the account by February 2004 at the latest. *Id.* at 148 n.4. The Court concluded that because the executor was appointed in 2003, but did not demand payment from the bank until June 2005, the executor's claims were precluded pursuant to section 4.406 as the bank made the statements available by retaining them for the estate representative. *Id.* at 149-50. The Court explained,

> [w]hen a bank is aware of a customer's death, it has no means of satisfying its section 4.406 burden other than by retaining the statements. Yet a bank should not be allowed to satisfy its burden until there is an appointed representative. Otherwise, the repose period could run without the opportunity for a customer to review the statements and discover the fraud.

*Id.* at 149. The Court held that in the context of a deceased customer, a bank satisfies its burden to send or make available to a customer a statement of account by retaining the account statement for retrieval by the estate administrator; however the burden to report the unauthorized signatures does not arise until an estate representative is appointed. *Id.* at 149-50

8

Unlike *Jefferson State Bank*, in this case, all but two of the transactions at issue occurred before Elton's death, and all the contested transactions were included on statements of account that were sent to Elton, and then to his POD beneficiary, Edna, without interruption. As the POD beneficiary, the accounts passed to Edna on Elton's death, not to the estate. The day after Elton's death, Edna signed new signature cards for the accounts. The Bank then sent the next monthly account addressed to "Elton Bovey POD/POA Edna Gayle Bovey."

The Bank contends that in this case the repose period was contractually shortened from one-year to 60 days. Therefore, even if the repose period did not begin to run until Coffey was appointed executor of Elton's estate, that period had expired by the time Coffey notified the Bank of the unauthorized transactions. Section 4.103(a) allows parties to vary the effect of Article 4's provisions by agreement, provided, however, that the agreement "cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure." Tex. Bus. & Com. Code Ann. § 4.103(a) (West 2002). This section gives parties the power essentially to alter all provisions of the Article by agreement. *See id*. at cmt. 2.

When Elton opened his accounts at the Bank, he signed the Bank's personal signature cards for the accounts, which reflect Elton's express agreement that his accounts would be governed by the terms and conditions set forth in the Deposit Agreement and Disclosures. The Deposit Agreement provided in part:

**Protecting Your Account**

Your role is extremely important in the prevention of wrongful use of your account. If you find that your records and ours disagree or if you suspect any problem or unauthorized activity on your account (such as a missing deposit or a forged or altered check or other withdrawal order), call us immediately at the number for Customer Service on your statement. If you fail to notify us in a timely manner, your rights may be limited. We may require written confirmation of your claim, including an affidavit signed by you on a form acceptable to us.

….

**Examining Statements and Reporting Problems**

This section applies to any problem or unauthorized transaction on your account, except electronic transactions….

You agree to promptly and carefully review your account statement and any accompanying items. You must report problems or unauthorized transactions to us immediately, by calling the number for Customer Service on your statement. We may require written confirmation of your claim, including an affidavit signed by you on a form acceptable to us. Problems or unauthorized transactions include: suspected fraud; missing deposits, unauthorized electronic transfers; missing, stolen, or unauthorized checks or other withdrawal orders; checks or other withdrawal orders bearing an unauthorized signature, endorsement or alteration; illegible images; encoding errors made by you or us; and counterfeit checks. You agree that 60 days after we send a statement and items (or otherwise make them available) is the maximum reasonable amount of time for you to review your statement or items and report any problem or unauthorized transaction related to a matter shown on the statement or items. In addition, if you do not notify us in writing of suspected problems or unauthorized transactions within 60 days after we send your statement or items, or otherwise make them available, you agree that you cannot make a claim against us relating to the unreported problems or unauthorized transactions, regardless of the care or lack of care we may have exercised in handling your account.

Coffey argues that the deposit agreement does not apply because it does not contemplate a deceased customer. Coffey states that the word "you" in the Deposit Agreement could

10

have been defined expressly to include "executors, administrators, heirs, assignees, agents, attorneys, etc." Coffey argues that the Bank's definition of "you" limits the application of the Deposit Agreement solely to the account holder, and therefore is inapplicable when an executor brings suit on behalf of the deceased account holder's estate.

The Deposit Agreement provides that "the words 'you,' 'your' and 'yours' refer to each account owner." The Deposit Agreement further describes a "'Payable on Death'" account in detail. It states, "You may designate an account to be payable on your death to a designated payable on death ('POD') . . . payee or payees. Regardless of how it is designated, an account which is payable on your death . . . to one or more named payees is a POD . . . account." The Deposit Agreement further provides that on the death of the account owner, "any sums remaining on deposit belong to the then-surviving (if any) payee(s), subject to [the Bank's] right to charge the account for any amount the deceased owner . . . owes us." Elton designated Edna as the POD beneficiary of both accounts. Thus, the Deposit Agreement clearly contemplates Elton's death, and Elton contractually designated Edna as the beneficiary of the accounts upon his death.

Coffey further argues that 60 days is unreasonable when applied to an executor. However, courts have found shortened time periods enforceable. *See Am. Airlines*, 29 S.W.3d at 97 (noting that other jurisdictions have enforced shortened notice periods from 14-60 days); *Schiro v. Tex. Cmty. Bank, N.A.*, 68 S.W.3d 55, 57-58 (Tex. App.—Dallas 2001, no pet.) (affirming summary judgment for bank when account holder failed to give

timely notice under section 4.406 or the deposit agreement that shortened the time period to 60-days). In this case, there is no contention that Elton did not sign the Deposit Agreement, nor is there a contention that he was incompetent at the time he signed the agreement. Coffey admits that she had received and reviewed Elton's bank records by May 29, 2009. We conclude the parties contractually agreed to shorten the one-year term prescribed by section 4.406 to 60 days by the terms of the Deposit Agreement. Coffey qualified as representative of Elton's estate on July 19, 2010, and filed suit on September 1, 2010. It is undisputed that Coffey did not provide the Bank any notice prior to filing the lawsuit.

However, though Coffey filed suit within 60-days of her qualification, we conclude the filing of her lawsuit was inadequate to provide notice to the Bank. Coffey contends that there is a distinction between reporting a specific "item" as required by section 4.406(f) and reporting a "problem" under the Deposit Agreement. She argues that under the terms of the Deposit Agreement it is sufficient for the account owner "to report 'suspected problems or unauthorized transactions' within sixty (60) days." Coffey argues that the Bank "received written notification of 'suspected problems' when [the Bank] was served with a lawsuit . . . ."

> The Deposit Agreement specifically provides:
>
> Problems or unauthorized transactions include: suspected fraud; missing deposits; unauthorized electronic transfers; *missing, stolen, or unauthorized checks or other withdrawal orders*; checks or other withdrawal orders

> bearing an unauthorized signature, endorsement or alteration; illegible
> images; encoding errors made by you or us; and counterfeit checks.

(Emphasis added). The Deposit Agreement further requires that customers report problems or unauthorized transactions by calling the customer service number on the account statement. Coffey did not allege, nor does the record indicate that Coffey properly reported the unauthorized transactions to the Banks' customer service department. Coffey contends, "[a] lawsuit is the quintessential example of written notification that 'suspected problems' exist." Coffey's petition states, "In the period leading up to his death, instruments drawn upon [Elton's] account(s) with Bank of America, but that were not signed by [Elton], were charged against [Elton's] account(s)." The petition did not identify anything specific about the transactions in issue. There is no identification of specific checks, no specific dates, no specific amounts. However, Coffey contends this was sufficient to notify the Bank of "suspected problems," as required by the Deposit Agreement. The Bank argues that Coffey's general reference in the pleading is inadequate and fails to specifically identify the checks at issue. We agree. In her petition, Coffey failed to inform the Bank of the specific items she questioned. We conclude her general reference in her pleading was inadequate. Coffey also contends that she timely notified the Bank of the contested matters in detail on October 5, 2010, when she responded to the Bank's written discovery requests. However, this would have fallen outside the shortened 60-day time period that the parties agreed to in the Deposit Agreement. We hold that the summary judgment evidence leaves no issues of material

fact as to whether Coffey's petition was sufficient to give the Bank notice. *See Schiro*, 68 S.W.3d at 58 (concluding notice was inadequate "even though the Bank may have been aware of the possibility of other unauthorized checks" when Schiro "did not provide notice of his unauthorized signature on the specific items in question."); *see also Hatcher Cleaning Co. v. Comerica Bank—Tex.*, 995 S.W.2d 933, 938 (Tex. App.—Fort Worth 1999, no pet.) (concluding the legislature intended the customer notify the bank of "the specific item, or in this case, check, on which the authorized signature appears."). After having found that Coffey did not timely or adequately notify Bank of America of the unauthorized transactions according to the terms in the Deposit Agreement, we affirm the summary judgment.

     AFFIRMED.

 

_____

CHARLES KREGER
Justice

Submitted on October 25, 2012
Opinion Delivered January 24, 2013

Before McKeithen, C.J., Gaultney and Kreger, JJ.

14