ACCEPTED
01-15-00210-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/14/2015 2:32:10 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00210-CV

*IN THE*

*FIRST COURT OF APPEALS*

*HOUSTON, TEXAS*

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
12/14/2015 2:32:10 PM
CHRISTOPHER A. PRINE
Clerk

FRANCISCO CALLEJA-AHEDO

Appellant

V.

COMPASS BANK

Appellee

On Appeal from the 55th District Court
Harris County, Texas

Trial Cause No. 2014-22168

**APPELLANT'S REPLY BRIEF**

Michael C. O'Connor
State Bar No. 15187000
Lesley C. O'Connor
State Bar No. 24086952
O'CONNOR & CRAIG
2825 Wilcrest Drive, Suite 261
Houston, TX 77042
713-266-3311

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................i

INDEX OF AUTHORITIES…………………………………..……………...ii

ARGUMENT…………………………………………………………....1

PRAYER………………………………………………………………19

# INDEX OF AUTHORITIES

**Case Law**

All Seasons Window & Door Man, Inc. v. Red Dot Corp.,
181 S.W.3d 490, 504 (Tex. App. ― Texarkana 2005, *no pet.*).....................19

American Airlines Employees Federal Credit Union v. Martin,
29 S.W.3d 86, 94 (Tex. 2000).......................................................................3

Bank of America, N.A. v. Haag,
37 S.W.3d 55, 58-59 (Tex. App. — San Antonio 2000, no pet.)................... 5

Bank of Texas v. VR Elec, Inc.,
276 S.W.3d 671, 678 (Tex. App. — Houston [1st Dist.] 2008,
pet. denied).......................................................................................15,16

Centex Corp. v. Dalton,
840 S.W.2d 952, 956 (Tex. 1992)..................................................................7

Coleman v. Bldg State Bank,
592 P.2d 103, 111 (Kan. App. 1979)..............................................................4

Compass Bank v. Nacim,
459 S.W.3d 95 (Tex. App. - El Paso, 2015, no pet.).........................10, 12, 15

Cumis Insurance Society, Inc. v. Girard Bank,
522 F. Supp. 414, 422 (E.D. Pa. 1981)........................................................17

El Apple 1, Ltd. v. Olivas,
370 S.W.3d 757, 763 (Tex. 2012).................................................................19

FDIC v. Lenk,
361 S.W.3d 602, 607-08 (Tex. 2012)......................................................4, 12

Greater Houston Transp. Co. v. Phillips,
801 S.W.2d 523, 525 (Tex. 1990) ................................................................1

Hohenberg Bros. Co. v. George E. Gibbons & Co.,
537, S.W.2d 1, 3 (Tex. 1976)........................................................................7

Jag Orthopedics, P.C. v. AJC Advisory Corp.,
   2015 NY Slip Op 31360, at 15 (U) (N.Y. Sup. Ct. 2015)............................16

Jefferson State Bank v. Lenk,
   323 S.W.3d 146, 149 (Tex. 2010)...........................................................4, 12

Martin v. Chase Manhattan Bank,
   791 N.Y.S.2d 158, 159-60 (N.Y.S.Ct. 2004)...................................................5

McConnell v. Southside Independent School District,
   858 S.W.2d 337, 341 (Tex. 1993)..................................................................12

McDowell v. Dallas Teachers Credit Union,
   772 S.W.2d 183, 192 (Tex. App. ― Dallas 1989, *no writ*)..........................15

Myrick v. National Savings & Trust Co.,
   268 A.2d 526, 528 (D.C. 1970)........................................................................4

Robinson Motor Xpress, Inc. v. HSBC Bank, USA,
    826 N.Y.S.2d 350 (N.Y.S.Ct. 2006).................................................................5

Terry v. Puget Sound Nat'l Bank,
   492 P.2d 534, 535 (Wash. 1972)......................................................................4

Union Planters Bank v. Rogers,
   912 So.2d 116, 122 (Miss. 2005)......................................................................4

Via Net v. TIG Ins. Co.,
   211 S.W.3d 310, 314 (Tex. 2006).....................................................................2

Wachovia Bank v. Fed. Reserve Bank,
   338 F.3d 318, 324-25 (4th Cir. 2003)..............................................................18

Westport Bank & Trust v. Lodge,
   325 A.2d 222, 226 (Conn. 1973)......................................................................4

**Statutes**

Tex. Bus. & Comm. Code §1.201..................................................................10, 16

Tex. Bus. & Comm. Code §3.406..................................................................15, 17

Tex. Bus. & Comm. Code §4.103...................................................................5, 13

Tex. Bus. & Comm. Code §4.406..................................1, 2, 3, 4, 5, 10, 12, 13, 14

Tex. Fin. Code §34.301.....................................................................................12

Tex. Fin. Code §34.302.......................................................................................6

# ARGUMENT

## I. APPELLANT'S NEGLIGENCE IS IRRELEVANT TO APPELLEE'S LIABILITY

Appellee Bank devotes a substantial part of its Brief to emphasizing that Appellant Calleja was negligent in failing to inquire about missing bank statements for almost 18 months. However, Calleja's negligence in failing to inquire, if any, is irrelevant to the liability issues in this case.

Negligence requires a duty of care. *See*, *e.g., Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). There can be no common law duty because the Bank concedes, and even emphasizes, that Tex. Bus. & Comm. Code §4.406, specifically provides a complete scheme of rights and duties regulating the relationship of a bank and its customer concerning the handling of bank statements. *See* Appellee's Brief at 22, fn 10. Any duty of Calleja to inquire about missing bank statements must emanate from §4.406, which expressly provides that a bank customer has no duty concerning bank statements **unless and until** the bank first "sends or makes available" the statements to its customer. *See also,* Official Comment 1 to §4.406, which states:

> The duty stated in subsection (c) [for customer to review bank statements] becomes operative only if the "bank sends or makes available a statement of account or items pursuant to subsection (a)." A bank is not under a duty to send a statement of account or the paid

items to the customer, but if it does not do so, the customer does not have any duties under subsection (c).

If a bank complies with its initial duty under §4.406, Calleja concedes that the customer bears the risk of non-receipt of the statements, such as when a wrongdoer intercepts the statements. In this case, the Bank failed to comply with this initial duty, which makes Calleja's alleged negligence irrelevant.

The crux of this lawsuit is whether the Bank sent or made available the relevant bank statements to its customer, as such duty was modified by the relevant Account Agreement. As shown below, the Bank failed to show that it properly sent or made available the relevant bank statements, which defeats the Bank's summary judgment. The Bank further ignores its own negligence and/or lack of good faith, which allowed an unknown wrongdoer to change the proper address where account statements were to be sent and then cashed a $37,800 check which contained a signature of Calleja completely dissimilar to the signature card.

## II. CASELAW SUPPORTS APPELLANT'S POSITION

The Bank cites numerous cases in its Brief, all of which are inapplicable to the Bank's initial duty to properly send or make available account statements. The Bank first cites and quotes from the Texas Supreme Court case of *Via Net v. TIG Ins. Co.* 211 S.W.3d 310, 314 (Tex. 2006), which discusses a common law duty of due diligence in non-banking contractual relationships. This duty simply does not

apply to §4.406, which specifically requires that a bank first send or make available account statements to its customer before the customer has any duty with respect to such statements. The Bank has recognized repeatedly that the UCC creates a "discrete fault scheme, specifically allocating responsibility among parties to a banking relationship." *See* Appellee's Brief at 16, fn 5; CR 188-92. The focus must be on §4.406 and not common law principles.

The Bank does discuss several §4.406 cases, all of which deal with situations in which a bank mailed account statements to a proper address, but the statements were then intercepted by a wrongdoer. The most important case is *American Airlines Emp. Fed. Credit Union v. Martin*, 29 S.W.3d 86, 94 (Tex. 2000), in which the Texas Supreme Court stated that the customer's duty to detect and report unauthorized transactions "is triggered when the bank meets its burden to provide the customer with enough information that the customer can detect that the unauthorized transaction has occurred." The Bank emphasizes that the Supreme Court also stated that a bank customer's burden "includes the risk of non-receipt of account statements." However, this latter quote must be taken in context with footnote 37 immediately following the statement, which clarifies that the risk of non-receipt falls on the account holder "when account statements are mailed to the proper address." The bank in *Martin* mailed the account statements to a proper address.

The Bank also cites and discusses *Union Planters Bank v. Rogers,* 912 So.2d 116, 122 (Miss. 2005); *Myrick v. Nat'l Sav. Trust Co.*, 268 A.2d 526, 528 (D.C. 1970); *Coleman v. Bldg State Bank*, 592 P.2d 103, 111 (Kan. App. 1979); *Westport Bank & Trust Co. v. Lodge,* 325 A.2d 222, 226 (Conn. 1973); and *Terry v. Puget Sound Nat'l Bank*, 492 P.2d 534, 535 (Wash. 1972), for the proposition that a bank customer loses if he fails to contact the bank concerning missing bank statements. Appellee's Brief at 15. However, these cases must again be considered in context, since in each case the bank sent statements to the proper address and/or to the person authorized to receive statements.[1] Calleja admits that when a bank complies with its initial duty under §4.406, and under its account agreement, the bank customer bears the risk of non-receipt of statements, as provided by the Texas Supreme Court in the *Martin* case.

The undisputed facts in this case are different. The evidence shows that the Bank sent the relevant statements to an unknown wrongdoer who convinced the Bank to change the authorized address on the Account. CR 49. The Bank completely ignores the cases holding that a bank is responsible in this situation.

The most important cases are from our own Texas Supreme Court. In both *FDIC v. Lenk*, 361 S.W.3d 602, 607-08 (Tex. 2012), and in *Jefferson State Bank v.*

---

[1] The *Lodge* case is the only case cited by the Bank which involves the wrongdoer changing the address to which statements were mailed. However, the wrongdoer was an employee of the account holder, the account holder knew and intended that account statements were being sent to the wrongdoer, and the account holder received overdraft notices at her home address.

*Lenk*, 323 S.W.3d 146, 149 (Tex. 2010), the Supreme Court clearly stated that a bank does not fulfill its §4.406 obligation to provide account statements "to a customer" by sending them to an imposter. Another significant case is *Bank of America, N.A. v. Haag*, 37 S.W.3d 55, 58-59 (Tex. App. ─ San Antonio 2000, *no pet.*), in which the court held specifically that a bank customer has no duty to notify the bank concerning missing bank statements that were improperly addressed. *See* Appellant's Original Brief at 18-19, 26 for further discussion of these cases. *See also, Martin v. Chase Manhattan Bank*, N.Y.S.2d 158, 159-60 (N.Y.S.Ct. 2004), and *Robinson Motor Xpress v. HSBC Bank, USA,* 826 N.Y.S.2d 350 (N.Y.S.Ct. 2006), discussed in Appellant's Original Brief at 20-21. The Bank does not attempt to discuss or distinguish these cases in its Brief.

## III. THE 2008 DEPOSIT AGREEMENT CONTROLS THE PARTIES' RELATIONSHIP

The Bank and Calleja both agree that §4.103(a) permits a bank and its customer to contractually modify "the effect of the provisions" in §4.406, which was done in this case. *See* Appellee's Brief at 23. However, §4.103(a) further provides that a bank cannot disclaim its responsibility "for its lack of good faith or failure to exercise ordinary care."

Although the parties agree that a contract applies to the deposit relationship, there is a dispute over which contract applies. The Bank produced not one but three

potential account agreements in this case. The first agreement, dated as of August 22, 2008, was attached to Calleja's Motion for Summary Judgment. CR 51-70. A more legible copy is attached at Appendix 2 to Appellant's Original Brief. The second agreement, dated as of February 2012, was attached to the Bank's Motion for Summary Judgment. CR 205-228. The third agreement, dated as of September 2013, was also produced by the Bank and attached to Calleja's Motion for Summary Judgment. CR 136-150.

An account agreement becomes effective as to the bank customer when it is mailed to the customer or as otherwise agreed to by the parties. *See* Tex. Fin. Code §34.302. Calleja acknowledges that he received the 2008 Account Agreement, which made it effective as to him. CR 46. The Bank does not dispute that the 2008 Account Agreement was effective between 2008 and 2012, but argues that the 2012 Account Agreement became effective and amended the 2008 Account Agreement shortly before the relevant account statements showing wrongdoing would have been generated by the Bank. Appellee's Brief at 24-27. Section 17 of the 2008 Account Agreement provides that it may be amended by:

> Mailing you notice of the amendment to the last address shown on our records, by making the notice available with the periodic statement of your account (as applicable) or by posting notice of the amendment in our offices. (CR 67 at bottom left, continuing at CR 68 at upper right).

Compliance with these provisions is in the nature of a condition precedent to any effectiveness of the 2012 Account Agreement, and the Bank had the burden of proving compliance with such conditions precedent. *See, e.g., Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992): *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). There is no evidence that the Bank did any of these things to make the 2012 Account Agreement effective as to Calleja. *See also, Amer. Airlines Empl. Fed. Credit Union v. Martin*, 29 S.W.3d 86, 96 (Tex. 2000), in which the Supreme Court discusses how a Deposit Agreement becomes "effective," which involves notice to the customer, which is lacking in Calleja's case.

The Bank now argues that Calleja sought to recover attorney's fees pursuant to the 2012 Account Agreement, thereby validating it despite any defects in the Bank's proof. *See* Appellee's Brief at 24-25. The Bank is wrong. Calleja never relied on the 2012 Account Agreement to recover attorney's fees. Instead, Calleja's attorney assumed that the 2013 Account Agreement was effective when this lawsuit was filed in 2014, and that it applied to a claim for attorney's fees made after 2013. *See* Calleja's Motion for Summary Judgment, CR 36, 44. The 2013 Account Agreement does not retroactively apply to occurrences in 2012, well before it would have become effective. *See* Section 16 of the 2012 Account Agreement, CR 219, which provides that amendments apply when they become

"effective." Calleja made his position concerning the 2012 and 2013 Account Agreements clear in his Motion for Summary Judgment. CR 36 at fn 1. Calleja has not taken inconsistent positions which would validate the effectiveness of the 2012 Account Agreement despite the Bank's lack of proof.

The Bank further argues that the account signature card includes Calleja's agreement to any amendments of the deposit contract. *See* Appellee's Brief at 24. The signature card is illegible concerning what agreements, if any, are in the signature card pertaining to amendments. In addition, the signature card is dated 3-11-88. The subsequent 2008 Account Agreement supersedes the signature card based upon the specific provision in the 2008 Account Agreement as to how amendments are to be made effective.

The Bank curiously quotes from the 2008 Account Agreement, which provides that "By continuing to maintain your account ... ***after the amendment becomes effective,*** you agree to the amendment of this Agreement." (emphasis added). The Bank then argues that Calleja agreed to the 2012 Account Agreement because he maintained his account after February 2012. *See* Appellee's Brief at 24-25. The Bank completely ignores the highlighted language that the customer must maintain his account "after the amendment becomes effective." There is simply no evidence that the 2012 Account Agreement ever became effective as to Calleja.

Finally, there is other evidence which shows that the 2012 Account Agreement was not effective as to Calleja. First, the February 7, 2014 letter from Jimmy Myers, a vice president of the Bank, quotes verbatim from the 2008 Account Agreement, which differs from the 2012 Account Agreement. CR 75. Second, unlike the 2008 Account Agreement, the 2012 Account Agreement states that it is for "Al Nova Branches Only." CR 228. Third, Mueller, the Bank's representative, states in her second affidavit that she only "believes," and that it "appears," that the 2012 Account Agreement is the one governing the deposit relation between Calleja and the Bank. CR 396. Mueller may have proved that the 2012 Account Agreement is a business record of the Bank, but this does not prove that the 2012 Account Agreement ever became effective as to Calleja. Significantly, the Bank fails to address any of this evidence in its Brief, despite being discussed by Calleja in his Original Brief at 8-10. The Bank itself conceded that the 2012 Agreement only "is believed to be the deposit agreement in effect during the relevant time period." CR 168, fn 1.

## IV. THE 2008 ACCOUNT AGREEMENT SUPPORTS APPELLANT'S POSITION

A legible copy of the 2008 Account Agreement is attached at Appendix 2 to Appellant's Original Brief. Significantly, the 2008 Account Agreement does not require that Calleja review account statements that were "made available." Instead,

the Agreement provides that Calleja must review only account statements he "receives" or alternatively, when the Bank "sends" the account statements. CR 295. The term "send" requires that the statement be "properly addressed." Tex. Bus. & Comm. Code §1.201(b)(36).

The identical language in another Compass Bank account agreement was interpreted by the Court in *Compass Bank v. Nacim*, 459 S.W.3d 95 (Tex. App. — El Paso 2015, *no pet.*). The *Nacim* court held that the distinction between "receives" and "sends" in the Compass Bank account agreement creates a conflict which must be interpreted against Compass Bank, and therefore the customer is only required to review account statements he "receives." Furthermore, the "made available" language in §4.406 was inapplicable because Compass bank had altered the §4.406 duties of the bank customer to eliminate that option. The Bank is collaterally estopped by the *Nacim* case from relitigating the terms of its own Agreement.

The Bank completely ignores the *Nacim* case in its Brief. By eliminating both the "send" and the "makes available" requirements, the 2008 Account Agreement completely undercuts the trial court's focus on whether account

statements were "made available." CR 735. [2]

The 2008 Account Agreement specifically provides that only "[a]ny account owner or authorized signer of a joint account may change the mailing address for your account." CR 295. The evidence in this case shows that the Bank allowed an unknown wrongdoer to change the address on the account multiple times, which obviously constitutes a breach of contract. CR 49. In its arguments, the Bank assumes that account statements concerning the Calleja account may not have been properly addressed. CR 374-75.

Despite the specific wording in the 2008 Account Agreement that only an account holder may change the mailing address for the account (CR 65), the Bank argues on appeal for the first time that mailing account statements to a fraudulent address not provided by an account holder was authorized. The Bank bases its position on wording in the 2012 Agreement, which provides that statements "may be mailed to you at the address shown in our records," coupled with a phrase in a later section of the Agreement that "records regarding your accounts will be deemed correct unless you timely establish with us that we made an error." CR 212; Appellee's Brief at 29.

---

[2] The Bank suggests in its Brief the many ways that Calleja could have obtained Account Statements, which allegedly shows that the Bank "made available" the Account Statements to Calleja. However, even the 2012 Account Agreement specifies that statements are "made available" by holding or delivering the statements "in accordance with your request or instruction." CR 212. There is no evidence that the Bank received any request or instruction from an account holder to hold the statements or deliver them other than to the brother's address in the Woodlands. *See* Appellant's Original Brief at 15-16.

The Bank never raised its records argument in its Motion for Summary Judgment (CR 161-200) and cannot do so here for the first time. Tex. R. Civ. P. 166a(c). As stated by the Supreme Court in *McConnell v. Southside Independent School District,* 858 S.W.2d 337, 341 (Tex. 1993):

> Consistent with the precise language of Rule 166a(c), we hold that a motion for summary judgment must itself expressly present the grounds upon which it is made. A motion must stand or fall on the grounds expressly presented in the motion. In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence.

The Bank's argument concerning its records completely falls apart since the 2008 Account Agreement and the *Nacim* case provide that Calleja's duty only applies to account statements he "receives." In addition, the Bank has a clear duty under both §4.406 and the 2008 Account Agreement to deliver account statements **to its customer**. The Texas Supreme Court has stated multiple times that a bank cannot fulfill this duty by sending account statements to an unknown imposter. *See FDIC v. Lenk, supra* at 607-08; *Jefferson State Bank v. Lenk, supra* at 149. The Supreme Court's conclusion was based not only on the wording of §4.406, but also Tex. Fin. Code §34.301(b), which provides that a bank must provide account statements "to an account holder." The Bank cannot simply contract away its duty by providing a "new" interpretation of the Account Agreement which authorizes the Bank to send account statements to an imposter.

Although Tex. Bus. & Comm. Code §4.103 allows the parties to vary "the effect of" §4.406, the Bank's "new" record interpretation goes beyond the "effect" of §4.406 to completely eliminate the Bank's duty thereunder, which it cannot do. Furthermore, §4.103 provides that the parties cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care. Allowing an unknown imposter to change the address on the account, particularly in the manner evidenced in this case (CR 49), raises issues both of lack of good faith and of negligence.

Obviously, the Bank's "new" interpretation concerning records also clashes with the provision that only the account holder can change the address on the account. The Bank cannot have it both ways. If only account holders can change the address on the account, then the Bank breaches the Account Agreement by allowing an imposter to change the name on the account. Alternatively, if the Bank can change the address on the Account at the request of an imposter, then the Bank breaches the provision that only an account holder can change the address on the account.

Furthermore, the Bank's interpretation concerning its records is flawed. The section in the Account Agreement that records are deemed correct unless the customer "timely" establishes that an error was made is taken out of context. The remainder of the section reflects the types of errors referred to, all of which are

errors concerning credits or debits described in the account statements. In addition, the Bank argues that "timely" means 30 days, which is derived from the wording later in the section, requiring that a customer review statements "received" by the customer. Appellee's Brief at 29. Taking the terms "errors" and "timely" in context demonstrate that these terms refer to credits or debits in any account statements received by Calleja. [3]

## V. THE BANK DID NOT PROVE THAT IT SUFFERED A LOSS

Tex. Bus. & Comm. Code §4.406(d)(1) provides that if a bank customer fails to timely report his unauthorized signature on a check after the bank sends or makes available the statement showing the problem, the customer is precluded from asserting the unauthorized signature against the bank, but only "if the bank also proves that it suffered a loss by reason of the [customer's] failure." The Bank offered no evidence that it suffered a loss and fails to even address this issue in its Brief, other than quoting §4.406(d) in its Brief at 23.

The first statement showing any problem was the June 2012 statement, which reflected a charge for new checks not ordered by Calleja. CR 246. Even assuming that the Bank sent or made available to Calleja the June 2012 statement during the first week in July (when statements for the prior month are customarily

---

[3] The Bank contends that the signature card contains a statement to "Hold All Correspondence" and also shows an address in Mexico, which the Bank argues is Calleja's "address shown in our records" and did not change. Appellee's Brief at 29, fn 17. To the contrary, the uncontroverted evidence shows that Calleja instructed the Bank to mail statements to his brother's address in the Woodlands, which the Bank did only prior to July 2012. CR 46.

14

mailed by the Bank), the forged check was paid by the Bank on July 30, 2012, which is less than 30 days after the June 2012 statement would have been sent. Since the Bank contends that Calleja had 30 days to report a problem, and the forged check was already paid during this time, the Bank cannot prove that it suffered a loss by reason of Calleja's failure to report a problem within the 30 day period. *See, e.g., Compass Bank v. Nacim*, 459 S.W.3d 95, 106-07 (Tex. App. ― El Paso 2015, *no pet.*). Calleja discussed this lack of proof in his Original Brief at 16, but the Bank fails to even address it in its Brief.

## VI. SECTION 3.406 DOES NOT APPLY

The Bank argues that Tex. Bus. & Comm. Code §3.406 bars Calleja's claims. Appellee's Brief at 16-22; CR 195.

Section 3.406 provides as follows:

> A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to making a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in ***good faith***, pays the instrument or takes it for value or for collection (emphasis added).

In order for §3.406 to apply, ***the Bank*** has the burden to prove that it paid the $38,700.00 check and any other items in "good faith" (emphasis added). *See, e.g., Bank of Texas v. VR Elec, Inc.,* 276 S.W.3d 671, 678 (Tex. App. ― Houston [1st Dist.] 2008, *pet. denied*); *McDowell v. Dallas Teachers Credit Union*, 772

15

S.W.2d 183, 192 (Tex. App. — Dallas 1989, *no writ*). In its brief, the Bank refers to *VR Elec, Inc.,* but then states that .... "[A]s the party alleging lack of good faith, Appellant bears the burden of proof." The Bank is wrong and completely misconstrues the §3.406 requirement that the Bank has the burden to prove that it acted in "good faith" under §3.406.

In *VR Elec, supra* at 678, the court began its analysis of §3.406 by clearly stating: "[A]s shown above, **the Bank must prove** that (1) [the customer] failed to exercise ordinary care that substantially contributed to the alteration of the check and (2) paid the check in "good faith" (emphasis added).

The Bank's assertion that its good faith in paying the subject check "is presumed" is clearly wrong. The term "good faith" means honesty in fact and "the observance of reasonable commercial standards of fair dealing." Tex. Bus. & Comm. Code §1.201(b)(20). The Bank has produced absolutely no evidence of its "honesty in fact" or of its "observance of reasonable commercial standards of fair dealing." The Bank cannot satisfy its proof burden by claiming that its good faith is presumed. *See also*, *Jag Orthopedics, P.C. v. AJC Advisory Corp.,* 2015 NY Slip Op 31360, at 15 (U) (N.Y. Sup. Ct. 2015) ("With respect to UCC 3-406, a bank cannot establish a defense under that section if it fails to show that it acted in good faith and in accordance with reasonable commercial standards.")

The Bank provides no evidence of either "honesty in fact" or "the observance of reasonable commercial standards of fair dealing." To the contrary, there are facts indicating the Bank's bad faith. The purported signature of Calleja on the $38,700 check bears no resemblance to Calleja's signature on the signature card. CR 71. Furthermore, Calleja stated in his affidavit that, "the Bank sent disks of recorded conversations between Bank employees and a person purporting to be me. I do not recognize this person's voice, and I did not authorize anyone to call the Bank and request that the address for the Account be changed or for the Bank to issue a debit/ATM card to anyone." CR at 49. These facts raise issues of the Bank's good faith which prevents the Bank from relying on §3.406 as a defense. If §3.406 is construed as the Bank has proposed, it would "have the effect of exculpating the bank from any liability regardless of its own negligence in paying the instruments bearing forged drawer signatures." *Cumis Insurance Society, Inc. v. Girard Bank*, 522 F. Supp. 414, 422 (E.D. Pa. 1981).

The Bank speculates that Calleja's brother was involved in the forgery of the $38,700.00 check, and that permitting the brother to access Calleja's banking information allowed other parties to learn Calleja's banking information, which "likely" allowed the forgery to occur. There is simply no proof of these speculations.

Calleja admits that monthly account statements were received at his brother's address in the Woodlands, but the uncontroverted evidence is that the Account Statements were never opened by the brother, were not available to anyone else before being delivered unopened to Calleja, and that all Account Statements and checks were accounted for prior to July 2012. CR 47- 48. The Bank has produced no evidence that Calleja or his brother failed to exercise ordinary care in handling checks and/or Account Statements and further has produced no evidence that actions or failure to act by Calleja or his brother contributed to "the making of a forged signature" in the $38,700.00 check. Any alleged failure to detect or report a forgery is completely different from any alleged action or failure to act which "contributed to the making" of the forgery. *See, e.g., Wachovia Bank v. Fed. Reserve Bank*, 338 F.3d 318, 324-25 (4th Cir. 2003).

## VII. THE BANK'S PROOF OF ATTORNEY FEES IS FAULTY

The Bank relied on three affidavits from Mr. Huttenbach to justify its claim for attorney's fees. CR 571-72; 604-06; 716-17. Calleja stated in his Original Brief at 33 that the fee statements proved by Mr. Huttenbach in his first affidavit only totaled $22,722.69. The Bank correctly points out that this is an error and that the fee statements attached to the first affidavit total $25,201.69. However, the Bank is wrong that the total of the fee statements proved by Mr. Huttenbach total $51,728.05. The Bank attempts to rely on fee statements included behind Mr.

18

Huttenbach's second affidavit, but Mr. Huttenbach does not mention or attempt to prove these fee statements. CR 604-06. The fee statements proved by Mr. Huttenbach in his first and third affidavits only total $34,793.04.

In addition, Mr. Huttenbach testifies in his third affidavit that "I currently charge the rate of $345.00 per hour, but Compass Bank gets a discount off my standard rate." CR at 716. However, the fee statement attached to Mr. Huttenbach's third affidavit reflects an hourly rate of $345.00, without the discount testified to by Mr. Huttenbach.

Finally Mr. Huttenbach testifies in his affidavits concerning his own credentials but fails to address credentials of the other attorneys and paralegals whose charges are reflected in the billing statements. This failure is fatal to the Bank's claim for attorney's fees. *See, e.g., El Apple 1, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012); *All Seasons Window & Door Man, Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 504 (Tex. App. — Texarkana 2005, *no pet.*).

## PRAYER

**WHEREFORE**, Appellant Francisco Calleja-Ahedo prays that this Court reverse the summary judgment granted by the trial court, render judgment in favor of Appellant on his Motion for Summary Judgment, or alternatively, remand this case to the trial court for further proceedings.

19

Respectfully submitted,

**O'CONNOR & CRAIG**

By: /s/ Michael C. O'Connor
        Michael C. O'Connor
        State Bar No. 15187000
        2825 Wilcrest Drive, Suite 261
        Houston, Texas 77042
        (713) 266-3311
        (713) 953-7513 (Fax)
        Email: moconnor@oconnorcraig.com

        Lesley C. O'Connor
        State Bar No. 24086952
        2825 Wilcrest Drive, Suite 261
        Houston, Texas 77042
        (713) 266-3311
        (713) 953-7513 (Fax)
        Email: loconnor@oconnorcraig.com

        **ATTORNEYS FOR APPELLANT**
        **FRANCISCO CALLEJA-AHEDO**

**CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 4,660 words (excluding the caption, table of contents, table of authorities, signature, proof of service, certificate and certificate of compliance). This is a computer generated document created using Microsoft Word, using 14-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served on the following counsel of record by telephonic transfer or electronic service, on this the 14th day of December, 2015.

Michael D. Conner
Hirsch & Westheimer
1415 Louisiana, 36th Floor
Houston, Texas 77002
Facsimile: 713-223-9319
E-Mail: Mconner@hirschwest.com

/s/ Michael C. O'Connor
Michael C. O'Connor