**Affirmed and Memorandum Opinion filed May 15, 2025**



In The

# Fifteenth Court of Appeals

## NO. 15-24-00096-CV

**ANTHONY NGUYEN, O.D., Appellant**

**V.**

**TEXAS OPTOMETRY BOARD, Appellee**

**On Appeal from the 455th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-23-007449**

## MEMORANDUM OPINION

Optometrist Anthony Nguyen, O.D., appeals from a judgment affirming the Texas Optometry Board's final order finding that Dr. Nguyen violated certain legal duties and assessing $4,000 in administrative penalties against him. Specifically, the final order concluded that Dr. Nguyen violated Texas Occupation Code Section 351.453 by failing to "personally examine patient A prior to signing a prescription for glasses" and assessed a $2,000 administrative penalty against him for that failure. The final order also concluded that Dr. Nguyen failed to "make and record

required findings during the initial examination of Patient A" as required by Texas Occupational Code Section 351.353 and assessed a $2,000 administrative penalty against him for that failure.

In two issues, Dr. Nguyen argues (1) that the Board misinterpreted the word "personally" in Section 351.453, and that Dr. Nguyen did not violate Section 351.453 when the word "personally" is properly interpreted; and (2) that because a physician gave specific direction and instructions to Dr. Nguyen, Chapter 351's examination requirements do not apply to Dr. Nguyen under the circumstances of this case. We affirm the trial court's judgment.

## BACKGROUND

Dr. Nguyen, a licensed optometrist, worked as an independent contractor for Texas Physicians Eyecare Group, P.C. ("TPEG"), a physician-owned medical practice that provides eye examination services. TPEG's medical director was Dr. Thomas Campen, M.D., who is a physician licensed with the Texas Medical Board.

In 2017, Dr. Nguyen entered into an Independent Contractor's Agreement (the "Agreement") with TPEG's predecessor, in which Dr. Nguyen agreed to provide optometry services on behalf of TPEG at a TPEG office in Sherman, Texas. Later, in 2019, Dr. Nguyen and TPEG executed an Addendum to the Agreement (the "Addendum") that required Dr. Nguyen to remotely review patient examination results and provide a prescription based on the reviewed results within six to fifteen minutes. TPEG also maintains a document called Requirements for Patient Examinations by the Physicians Eyecare Group ("Exam Requirements"), which details the steps for conducting a remote examination.

### Dr. Nguyen Issues a Glasses Prescription for Patient A

2

The patient at issue in this matter, "Patient A," visited a TPEG-owned Stanton Optical location in 2021. Patient A received a remote eye examination from TPEG. TPEG technicians performed various tests and sent the results to Dr. Nguyen, who remotely reviewed the data and issued a prescription to Patient A for glasses. It is undisputed that Dr. Nguyen was not at the Stanton Optical location and did not interact with Patient A before issuing the glasses prescription.

Texas Occupations Code Section 351.353 directs that, in the "initial examination" of the patient, the optometrist "shall make and record, if possible, the following findings concerning the patient's condition":

(1)   case history, consisting of ocular, physical, occupational, and other pertinent information;

(2)  visual acuity;

(3)   the results of a biomicroscopy examination, including an examination of lids, cornea, and sclera;

(4)  the results of an internal ophthalmoscopic examination, including an examination of media and fundus;

(5)  the results of a static retinoscopy, O.D., O.S., or autorefractor;

(6)  subjective findings, far point and near point;

(7)  assessment of binocular function;

(8)  amplitude or range of accommodation;

(9)  tonometry; and

(10)  angle of vision, to right and to left.

Tex. Occ. Code § 351.353.

TPEG technicians performed autorefraction and tonometry tests on Patient A, and they took specialized photographs of his eyes. TPEG staff members sent this information to Dr. Nguyen. Dr. Nguyen did not make or record the following findings in his examination of Patient A: the results of a biomicroscopy examination; results of an internal ophthalmoscopic examination; subjective

3

findings, far point and near point; assessment of binocular function; and angle of vision, to right and to left. It is undisputed that Dr. Nguyen issued a prescription for Patient A without making these findings.

Patient A was unhappy with his glasses and sought a second opinion. The second optometrist issued a new prescription and identified a potential retinal issue and a concern for glaucoma. Patient A was referred to a retinal specialist who cleared Patient A of the concerns.

### *The Board Imposes an Administrative Penalty Following a Hearing*

In 2022, the Board filed a complaint with the State Office of Administrative Hearings ("SOAH") alleging that Dr. Nguyen's examination violated the Texas Optometry Act (the "Act"), which governs the conduct of optometrists, along with regulations passed pursuant to that Act. Relevant here, the Board alleged that Dr. Nguyen violated the Act by (1) failing to "personally" examine Patient A in person before prescribing lenses for glasses, and (2) failing to make and record certain required findings of Patient A's condition during an initial examination before prescribing the lenses. The Board requested that the administrative law judge ("ALJ") issue a proposal for decision finding that Dr. Nguyen willfully violated the Act, assessing a $7,500 administrative penalty against him, and suspending his license for six months.

Dr. Nguyen disputed the allegations. He argued that the Act exempts optometrists from its requirements to the extent that they act under the specific instructions of a physician. He further asserted that because he was acting under the specific instructions of physician-owned TPEG, the Act's examination requirements did not apply to him. In the alternative, Dr. Nguyen argued that even if the Act applied, the Act did not require him to examine Patient A in person, nor did the Act require him to make the omitted findings given that it was not possible

4

to do so when treating Patient A remotely.

On April 20, 2023, the ALJ issued a proposal for decision concluding that Dr. Nguyen had violated the Act, but he had not done so willfully. The ALJ found that TPEG did not issue specific instructions to Dr. Nguyen, and so he was not exempt from the Act pursuant to Section 351.005's carveout for actions performed or directed by a medical doctor. The ALJ further found that Dr. Nguyen violated the Act by failing to examine Patient A in person and failing to make and record required findings during his initial examination of Patient A.[1] The ALJ recommended an administrative penalty of $2,000 for Dr. Nguyen's failure to examine Patient A in person and another penalty of $2,000 for Dr. Nguyen's failure to make and record the required findings. The ALJ concluded that because his violations were not willful, the requested sanctions of a license suspension, additional education, and practice monitoring were not appropriate.

After Dr. Nguyen filed exceptions to the ALJ's proposal for decision, the Board issued a final order adopting all the ALJ's findings of fact and conclusions of law, which includes the administrative penalty recommendations. Dr. Nguyen filed a motion for rehearing with the Board, and the Board denied rehearing.

Dr. Nguyen filed a petition in Travis County District Court appealing the Board's final order. The trial court affirmed the Board's final order, and Dr. Nguyen appealed to this Court.

---

[1] The ALJ specifically found that Dr. Nguyen failed to make or record the following required findings in his examination of Patient A: (1) results of a biomicroscopy examination; (2) results of an internal ophthalmoscopic examination; (3) subjective findings, far point and near point; (4) assessment of binocular function; and (5) angle of vision, to right and to left. *See* Tex. Occ. Code § 351.353.

## STANDARD OF REVIEW

The focus of this Court's review, as in the district court, is the Board's final decision. We review the Board's final order for substantial evidence. Tex. Gov't Code § 2001.174; *see also* Tex. Occ. Code § 351.561 (incorporating Tex. Gov't Code ch. 2001 (Administrative Procedure Act or APA) for proceedings related to administrative penalties levelled under the Act). Under substantial evidence review, we reverse the Board's decision only if Dr. Nguyen's substantial rights have been prejudiced because the Board's decision was:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code § 2001.174(2).

Construction of a statute is a question of law, which we review de novo. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). We look to the plain meaning of a statute's words to discern the Legislature's intent. *See Aleman v. Tex. Med. Bd.*, 573 S.W.3d 796, 802 (Tex. 2019). Our objective is to "'consider the context and framework of the entire statute' and construe it as a whole." *Id.* (quoting *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017)).

"Whether there is substantial evidence to support an agency's decision is a question of law." *Tex. Dep't of Pub. Safety v. Flores*, No. 15-24-00018-CV, 2024 WL 4887998, at *2 (Tex. App.—15th Dist. Nov. 7, 2024, no pet.) (mem. op.).

Substantial evidence review "does not allow a court to substitute its judgment for that of the agency." *Railroad Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995). "Review under the substantial-evidence rule is highly deferential—the issue is not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for it." *N.E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020).

Substantial evidence supporting an administrative agency's decision "requires only more than a mere scintilla, and 'the evidence [i]n the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence.'" *Railroad Comm'n*, 912 S.W.2d 790, 792–93 (Tex. 1995) (quoting *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984)). "The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise." *Texas Comm'n on Env't Quality v. Maverick Cnty.*, 642 S.W.3d 537, 547 (Tex. 2022) (quoting *Charter Med.–Dall.*, 665 S.W.2d at 453).

## ANALYSIS

In two issues, Dr. Nguyen challenges the Board's findings and conclusions that (1) the Act required Dr. Nguyen to examine Patient A in person before signing a prescription for glasses; and (2) the Act required Dr. Nguyen to make and record certain findings of Patient A's condition in an initial examination. On this second issue, Dr. Nguyen argues that he was exempt from the Act's requirements because he was acting under the specific direction and instruction of a medical doctor. We examine these issues in turn.

### I. Dr. Nguyen Failed to Personally Examine Patient A's Eyes

Section 351.453 of the Texas Occupations Code states "[a]n optometrist . . . may not sign, or cause to be signed, an ophthalmic lens prescription without first *personally examining the eyes* of the person for whom the prescription is made." Tex. Occ. Code § 351.453 (emphasis added). The Board concluded that Dr. Nguyen violated the Act by failing to "personally examine" Patient A's eyes prior to issuing Patient A his prescription for glasses. The ALJ's opinion, which the Board adopted in full in its final order, reasoned that Dr. Nguyen was required to examine Patient A in person, which the parties do not dispute that he failed to do.

Dr. Nguyen argues the ALJ misinterpreted "personally" to mean "in person", meaning Dr. Nguyen's physical presence was required in examining Patient A. Dr. Nguyen contends that "personally" can also mean that the action was committed by the individual specified. The Board responds that "personally examining the eyes" means "in person" and Dr. Nguyen's failure to examine Patient A's eyes in person violated the Act.

"When construing a statute, our primary objective is to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen." *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 253 (Tex. 2023) (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007)). Words not "statutorily defined bear the common, ordinary meaning unless a more precise definition is apparent from the statutory context or the plain meaning yields an absurd result." *Id.* (quoting *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018)).

The Act does not define the term "personally," so we look to the word's ordinary and common meaning. The Board cites several dictionaries that define "personally" to mean "in person." *Personally*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/personally (last visited May 9, 2025)

8

("in person"); *Personally*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/search/dictionary/?scope=Entries&q=personally (last visited May 9, 2025) ("[i]n person; . . . ."); *Personally*, DICTIONARY.COM, https://www.dictionary.com/browse/personally (last visited May 9, 2025) ("through direct contact; in person; directly"). Dr. Nguyen cites the Oxford Languages Dictionary as defining "personally" to mean "with the personal presence *or action* of the individual specified; in person." All of these sources—including the definition that Dr. Nguyen cites—define the word "personally" to mean "in person."

Nevertheless, we need not determine whether the Act requires an optometrist to examine a patient's eyes "in person" before issuing a glasses prescription. That is because Dr. Nguyen's involvement here is so far removed from the examination of Patient A's eyes that it does not constitute a "personal" examination even under Dr. Nguyen's proposed looser definition of the term. Section 351.353 provides context for what it means for an optometrist to "personally examine" the eyes of the patient before providing a glasses prescription. Section 351.353 requires an optometrist in an initial examination to "make and record, if possible, the below findings concerning a patient's condition before he can issue a lens prescription":

> (1) case history, consisting of ocular, physical, occupational, and other pertinent information;
>
> (2) visual acuity;
>
> (3) the results of a biomicroscopy examination, including an examination of lids, cornea, and sclera;
>
> (4) the results of an internal ophthalmoscopic examination, including an examination of media and fundus;
>
> (5) the results of a static retinoscopy, O.D., O.S., or autorefractor;
>
> (6) subjective findings, far point and near point;
>
> (7) assessment of binocular function;

9

(8) amplitude or range of accommodation;

(9) tonometry; and

(10) angle of vision, to right and to left.

Tex. Occ. Code § 351.353. This list indicates that the Legislature intended for such tests to be standard practice. Thus, the requirement that the optometrist "personally examine" the patient's eyes must entail—at a minimum—a degree of patient interaction that makes it possible for such findings to be made and recorded.

That did not happen here. As Dr. Nguyen testified himself, he had no interaction with Patient A. He did not examine Patient A through videoconference or through any other medium, let alone in person. Dr. Nguyen testified that he did not administer any of the tests listed in the Exam Requirements for Patient A. What is more, he testified that he had *no control* over the administration of the tests performed on Patient A, which were conducted by TPEG support staff. Dr. Nguyen further agrees with the Board that he did not perform some of the required tests on Patient A under Section 351.353, either in person or through proxy. By his own words, all Dr. Nguyen did was issue a prescription after receiving pictures and data from tests performed by TPEG support staff, which Dr. Nguyen neither directed nor controlled. But looking at data provided by a third-party is at least one step removed from "personally examining" Patient A's eyes. Tex. Occ. Code § 351.453. And Dr. Nguyen concedes that it was not even possible for him to perform all of the tests set out in Section 351.353 under the remote-work arrangement that he had with TPEG.

Underlying all the definitions of "personally" that we have cited—including Dr. Nguyen's proposed definition—is the notion of a direct or close involvement. Here, the TPEG support staff was directly involved in examining Patient A's eyes. Dr. Nguyen was not. Even if "personally" does not mean "in person," Dr.

10

Nguyen's involvement was too attenuated to the examination of Patient A's eyes to be considered "personal action."

Dr. Nguyen responds by arguing that the Act's use of the phrase "personally examine the eyes of the patient" cannot be construed to require an "in person" examination because optometrists are authorized by rule to provide telehealth services. Rule 279.16 requires an optometrist to meet the Section 351.353 prescription exam requirements but allows an optometrist to provide telehealth services to a patient through three methods: (1) "synchronous audiovisual interaction"; (2) "asynchronous store and forward technology, including asynchronous store and forward technology in conjunction with synchronous audio interaction"; or (3) "another form of audiovisual telecommunication technology . . . ." 22 Tex. Admin. Code § 279.16(b)(2), (e). If an optometrist engages in the second method, he must "provide the patient with guidance on appropriate follow-up care . . . ." *Id.* § 279.12(b)(2)(D). We need not determine whether full compliance with Rule 279.16 could qualify as "personally examining the eyes of the patient" because it is undisputed that Dr. Nguyen did not fully comply with that Rule. Dr. Nguyen testified that he did not interact with Patient A at all. Dr. Nguyen therefore did not supply Patient A with "follow-up guidance" that would be required for an examination using "asynchronous store and forward technology." Consequently, we find no error in the Board's conclusion that Respondent "did not personally examine Patient A prior to signing a prescription for glasses."

Dr. Nguyen also argues that this Court should adopt the stance of the Office of the Governor, which in a memorandum to the Board stated the phrase "personally examining" in Section 351.453 of the Act does not mean "in person." *Memorandum to Tex. Optometry Bd. from Regul. Compliance Div.*, Off. of the Governor, April 9, 2024. That memorandum states Section 351.453 "does not

11

expressly require such [Section 351.353 initial] examinations or findings to be made in-person, only that they be made personally by the optometrist signing or causing a prescription to be signed." *Id.* at 4. As noted above, we need not address whether "personally examine" under Section 351.453 means "examine in person" because Dr. Nguyen's involvement is far removed from the examination of Patient A's eyes even under Dr. Nguyen's proposed looser definition of the phrase "personally examine." We find that substantial evidence supports the Board's conclusion that Dr. Nguyen violated the Act by failing to "personally examine" Patient A. We overrule Dr. Nguyen's first issue.

## II. Dr. Nguyen's Failure to Perform Certain Exam Requirements

In his second issue, Dr. Nguyen argues that Texas Occupations Code Chapter 351 does not apply to Dr. Nguyen because he received specific direction and instruction from a physician. Consequently, according to Dr. Nguyen, he was exempt from Chapter 351's requirements that he "personally examine" Patient A and make and record the findings listed in Section 351.353. The Board responds that the Exam Requirements did not provide Dr. Nguyen with specific instruction to aid or attend to the needs of a patient, and so he is not exempt from the Act's requirements.

### A. Dr. Nguyen Did Not Fall Within the Act's Exemption from Compliance

Section 351.005 of the Optometry Act provides:

§ 351.005.  APPLICATION OF CHAPTER; EXEMPTIONS.

(a)  This chapter does not:

. . .

(2)  prevent or interfere with the right of a physician licensed by the Texas Medical Board to:

(A)  treat or prescribe for a patient; or

12

(B) direct or instruct a person under the physician's control, supervision, or direction to aid or attend to the needs of a patient according to the physician's specific direction, instruction, or prescription; . . . .

Tex. Occ. Code § 351.005. Any "direction, instruction, or prescription described by Subsection (a)(2)(B) must be if in writing if it is to be followed, performed, or filled outside the physician's office." *Id.* § 351.005(b).

At his hearing, Dr. Nguyen argued that Dr. Campen and TPEG gave him specific instructions to attend to the needs of a patient as evidenced by the Exam Requirements and supporting testimony. The Board disagreed and made a number of findings of fact on the issue:

- "The Addendum provided no specific instruction or direction. It did not instruct Respondent on how to determine a prescription with the data he received from the Stanton Optical technicians or provide any direction on how to review or analyze the data."

- "The Exam Requirements were directed to staff of TPEG. They did not instruct or direct Respondent. They explained actions that a doctor may take but did not prescribe, instruct, or require the doctor to take any action."

- "Neither the Addendum or the Exam Requirements was directed to a particular patient or class of patient, other than those in remote examinations."

- "The Exam Requirements were not directed to a particular doctor or staff member and not tailored to the particular skill, training, or education of a staff member."

- "No other written instructions were provided to Respondent by Dr. Campen."

Substantial evidence supports the Board's final decision that Dr. Campen and TPEG did not give Dr. Nguyen specific instructions to aid or attend to the needs of a patient. "Specific" means "[o]f, relating to, or designating a particular or defined thing; explicit . . . ." *Specific*, BLACK'S LAW DICTIONARY (12th ed. 2024).

13

Assuming without deciding the Exam Requirements apply to Dr. Nguyen, they do not provide him with "specific" instruction.[2] At most, they instruct him to use his discretion in making decisions with the patient information he receives. The introduction in the Exam Requirements states that services are provided by ophthalmologists, optometrists, and supportive staff and afterwards states "[e]very new patient examination must include the following minimum requirements" before listing six such requirements.

In the few times where an optometrist is mentioned in these minimum requirements, they either emphasize the optometrist or "doctor's" discretion or merely note that a certain test will be done without providing any specifics on how the test should be done. Requirement three ("Refraction") states "[r]efractions will be done by either an onsite doctor or using telemedicine with a remote technician or optometrist . . . ." Requirement four ("Retest/Tech Action") states "[b]ased on assigned doctor's discretion, the doctor *may* elect 'retest' which would signal a secondary refraction[.]" (emphasis added). Requirement five ("Contact lens exam (trials/finalized Rx)") states "the prescribing doctor will determine what is best for the patient." Requirement six ("Sign off process") states "[a]fter the exam is reviewed by the doctor, a written assessment and plan is documented" and gives four examples of what those assessments "*could be . . . .*" (emphasis added).

Testimonial evidence further supports that Dr. Nguyen was not given specific instruction through the Exam Requirements or otherwise. Dr. Nguyen testified that once he receives a patient's exam information, he exercises his discretion on whether to issue a prescription. He testified that this process was

---

[2] As Dr. Nguyen does not raise on appeal whether the Addendum provided him with specific instruction, he has waived that issue. *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 612 (Tex. 2012).

followed for Patient A and that he issued Patient A a prescription for glasses without ever interacting with Patient A. Both Dr. Brad Brocwell, who oversaw clinical operations at TPEG, and Dr. Campen testified that they did not interfere with Dr. Nguyen's discretion in issuing prescriptions, asking for retesting, or referring a patient for additional treatment.

Such instructions amount to merely telling Dr. Nguyen to practice optometry and so are not "specific." They do not provide Dr. Nguyen with any guidance on how to reach his decisions, which is what would make the instructions "[o]f, relating to, or designating a particular or defined thing . . . ." *Specific*, BLACK'S LAW DICTIONARY (12th ed. 2024).

Dr. Nguyen further argues that testimonial evidence in the record—his own and his supervisors' testimony—demonstrates that the Exam Requirements provided him with specific instruction. Dr. Nguyen testified that he must follow the Exam Requirements and could not deviate from them. He explained that he could not perform some of the tests required by the Act because the Exam Requirements did not allow for them. Dr. Brocwell and Dr. Campen also testified that the Exam Requirements were a mandatory protocol that Dr. Nguyen must follow. Assuming that the Exam Requirements apply, at most they instruct Dr. Nguyen to use his discretion in making decisions with the patient information he receives. This is most evident in the testimony of Dr. Brocwell and Dr. Campen that the Exam Requirements did not interfere with Dr. Nguyen's discretion in issuing prescriptions, asking for retesting, or referring a patient for additional treatment.

Substantial evidence therefore supports the Board's decision that the Act applies to Dr. Nguyen.

**B. Dr. Nguyen Failed to Make and Record Required Findings of Patient A's Condition in an Initial Examination.**

Section 351.353 states that an optometrist in his initial examination of a patient "shall make and record, *if possible*, the following [ten] findings concerning the patient's condition" and goes on to list ten tests. Tex. Occ. Code § 351.353 (emphasis added). The parties do not dispute that Dr. Nguyen failed to perform some of these tests. However, Dr. Nguyen argues that he is exempted from performing some of these tests because it was impossible to perform them while working remotely and following Dr. Campen's specific instructions as provided in the Exam Requirements. The Board responds that Dr. Nguyen was not acting under specific instruction by Dr. Campen and so is not exempt from complying with Section 351.353.

Substantial evidence supports the Board's decision that Dr. Nguyen violated the Act by failing to make and record the requisite findings under Section 351.353. As explained in greater detail under Part II.A., the Act's exemption for optometrists acting under the specific instructions by a physician "to aid or attend to the needs of a patient" does not apply here because the Exam Requirements do not specifically instruct Dr. Nguyen. *See* Tex. Occ. Code § 351.005(a)(2). Dr. Nguyen therefore cannot use that exemption to meet the impossibility defense provided in Section 351.353.

Dr. Nguyen objects that he was practicing telemedicine under the instruction of Dr. Campen, as allowed by Title 3, Chapter 111, of the Texas Occupations Code and so was not required to examine Patient A in person. Chapter 111 allows a "health professional" acting under the delegation of a physician to provide health care services "to a patient at a different physical location than the physician or health professional using telecommunications or information technology." Tex.

Occ. Code §§ 111.001(4), 111.005(a). Practicing telemedicine does not exempt Dr. Nguyen from complying with the provisions of the Act. First, optometrists are only exempt from the Act if physicians provide them specific instructions "to aid or attend to the needs of a patient . . . ." Tex. Occ. Code § 351.005(a)(2)(B). As shown in Part II.A., substantial evidence shows that no such specific instructions were provided. Second, as explained in Part I., we do not hold here that the Act required Dr. Nguyen to examine Patient A in person.

Dr. Nguyen otherwise argues that he was contractually required to perform telemedicine eye examinations and that some of the Section 351.353 tests cannot be performed remotely. He further contends that Dr. Campen prohibited him from performing some of the Section 351.353 tests. These issues amount to business decisions made between TPEG and Dr. Nguyen and do not reflect external legal or factual constraints that would impair Dr. Nguyen's ability to perform these tests. To adopt Dr. Nguyen's line of reasoning would allow optometrists to manufacture an impossibility defense by merely entering into arrangements that artificially constrain themselves from conducting Section 351.353's tests. We overrule Dr. Nguyen's second issue.

## CONCLUSION

Substantial evidence supports the Board's decision. We affirm the trial court's judgment.

/s/ April Farris
April Farris
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.

17